16433

MOSELEY v. WELCH *ET AL.*

STATE *EX REL.* MOSELEY *ET AL.* v. WELCH *ET AL.*

(62 S. E. (2d) 313)

244

*Messrs. Connor & Connor,* of Kingstree, *for Appellants,*

*Messrs. Henry E. Davis,* of Florence, and *Edward W. Cantwell,* of Kingstree, *for Respondents,*

*Messrs. Connor & Connor,* of Kingstree, and *Samuel Want,* of Darlington, *for Appellants, in reply,*

November 20, 1950.

OXNER, Justice.

The history of the litigation leading up to this appeal is succinctly stated in the following agreed statement:

"The original action in this matter was commenced in September, 1946, by the plaintiffs above named as two taxpayers and freeholders residing in Salters School District No. 32 against the members of the County Board of Education for Williamsburg County and the then trustees of Salters School District No. 32, for the purpose of requiring said defendants to reopen the grammar school in Salters, S. C., which had been previously closed, and to enjoin the transfer of white grammar school pupils from Salters School District No. 32 to Kingstree School District No. 16. On November 18, 1946, Judge M. M. Mann issued the first decree in the case ordering the trustees of Salters School District to open and maintain the grammar school in Salters, and further directed the County Board of Education to cooperate with the trustees of the Salters School District in carrying out said order. No appeal was taken from the order of Judge Mann.

"In compliance with Judge Mann's order, a white grammar school was reopened in Salters at the beginning of the school year 1947-1948. The sufficiency of the said school is somewhat disputed, but that particular issue is not involved in this appeal. Some of the patrons of the Salters School District, after the school was reopened at Salters, continued to send their children to the Kingstree School. An additional action was brought in the matter in August, 1947,

in which the same petitioners asked that the order of Judge Mann be carried into effect, and also that the defendants be enjoined from consolidating Salters School District No. 32 with Kingstree School District No. 16. On this matter Judge Martin handed down his order dated December 20, 1947, in which he held that the action to enjoin the consolidation of the school districts was prematurely brought, and dismissed this action, but held that the order of Judge Mann dated November 18, 1946, was still in effect and was *res adjudicata* as to all issues covered thereby and binding on all present defendants. The order of Judge Martin was not appealed from. In September, 1948, another action was brought in the same case by the same plaintiffs to further enforce the order of Judge Mann and to hold the defendants in contempt in not complying with said order. This petition was heard before Judge Greneker and he, in effect, held that the orders of Judge Mann and Judge Martin, having never been appealed from, were *res adjudicata.*

"The action from which this appeal stems was commenced on September 26, 1949, in which the petitioners pray that T. J. Appleby, the present Superintendent of Education, be made a party to the action; that the County Board of Education and the acting trustees of Salters School District No. 32 be required to account for all funds alleged to have been illegally diverted and misused; that the County Board of Education and the County Superintendent of Education be enjoined from transferring to any other school district any white pupils of grammar school age residing in Salters School District No. 32, and also from furnishing at public expense transportation to other school districts; and that the members of the County Board of Education and the Superintendent of Education be enjoined from paying out any public funds by way of attorneys' fees or other expenses of litigation, and to further enforce Judge Mann's order and orders subsequent thereto.

"The intervenors, who are the only appellants here, intervened in this action, alleging that they were residents of

Salters School District No. 32 and that they owned property, and paid taxes in Kingstree School District No. 16, and under authority of Section 5346 of the 1942 Code of Laws of South Carolina, that they were entitled to send their children to the school of either school district. An agreement was entered into between the attorneys for the petitioner and the attorneys for the respondents in the Court below, other than the intervenors, settling all of the issues in the case except the issue of whether or not the intervenors had a right to send their children to the schools of Kingstree, School District No. 16, and have furnished for them transportation at public expense; therefore, this was the only issue before the Court. The matter was argued before his Honor, Judge William H. Grimball, at the 1949 Fall term of Common Pleas Court for Williamsburg County.

"Judge Grimball handed down his order dated December 12, 1949, holding that the order of Judge Mann was *res adjudicata* as regards the intervenors and that the fifth proviso of Section 5346 of the Code of Laws for 1942 was unconstitutional, and further ordered that the intervenors be required to educate their children of grammar school age in School District No. 32, commencing with the beginning of the school term in 1950-51. From this decree of Judge Grimball's this appeal is taken."

It might be well to supplement the foregoing facts by stating that the closing of the Salters School resulted from the adoption by Williamsburg County of the "County Unit Plan" of education. Act No. 502 of the Acts of 1944, 43 St. at L. 1368. The constitutionality of this legislation was promptly challenged but it was finally determined that while certain parts of the Act were invalid, the general scheme was free from constitutional objections. *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133.

As heretofore pointed out, all issues involved in this lengthy litigation have been settled except the question of whether the intervenors, appellants on this appeal, who re-

side in Salters School District No. 32 but who own real estate in Kingstree School District No. 16, have a right to send their children to the schools of the latter district and to use bus transportation furnished at public expense. They claim that they are entitled to this privilege under the following proviso contained in Section 5346 of the 1942 Code: "Provided, however, that when either parent, the guardian or other person having in charge any pupil and maintain any such pupil at his home, shall own and pay tax on any property in a school district adjoining that in which any such person and pupil reside, such pupil may be enrolled either in the district in which he resides, or in any such adjoining district, without being required to pay tuition fee or other operating expenses and shall be entitled to all of the privileges of such school as if he resided in such school district. Provided, this law shall not apply to Clarendon County or Barnwell County. Provided, Richland County is exempted from the provisions of this section. Provided, further, that the provisions of the two preceding provisos shall not apply to Spartanburg County."

Respondents contend, and the Court below held, that the exemption of certain counties has the effect of rendering the foregoing provision unconstitutional as denying due process of law and the equal protection of the laws guaranteed by the Fourteenth Amendment to the Federal Constitution and Article 1, Section 5 of our State Constitution. This contention is apparently based on the claim that this provision unjustly discriminates against residents of the counties that are excluded. We pass over the question of whether those who live in a non-exempt county are in a position to challenge the constitutionality of this legislation on the ground now asserted. It should be further stated that no attack is made on this provision upon the ground that it constitutes special legislation of the sort prohibited by Article 3, Section 34 of the State Constitution. We shall, therefore, confine our consideration solely to the question of whether this provision constitutes a denial of the consti-

tutional guaranty of due process of law and equal protection of laws.

It was long ago decided that this constitutional guaranty "does not require territorial uniformity". *Ocampo v. United States,* 234 U. S. 91, 34 S. Ct. 712, 715, 58 L. Ed. 1231. "The Fourteenth Amendment does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state." *Ft. Smith Light & Traction Co. v. Board of Improvement of Paving District No. 16 of City of Ft. Smith,* 274 U. S. 387, 47 S. Ct. 595, 597, 71 L. Ed. 1112. "In the absence of restrictions contained in state constitutions the legislature may determine within broad limits whether particular laws shall extend to the whole state or be limited in their operation to particular portions of the state. All that the Federal Constitution requires is that they shall be general in their application within the territory in which they operate." 12 Am. Jur., Constitutional Law, Section 488, page 167. It is only necessary that there be a reasonable basis for the limitation or differentiation and that all persons similarly situated in the same territory are treated alike. 16 C. J. S., Constitutional Law, § 506. In *State v. Berlin,* 21 S. C. 292, the Court quoted with approval the following: "To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the state; all that is required is, that it shall apply equally to all persons within the territorial limits described in the act."

It is our conclusion that the Court below erred in holding that the proviso in controversy violates the constitutional guaranty of due process of law and equal protection of the laws. We do not know why certain counties were excluded from this provision. Doubtless this was done on account of peculiar conditions existing in these counties. In *Moseley v. Welch, supra,* we called attention to the fact that the general school law of this State contains

special provisions relating to a number of counties, which indicated a legislative conclusion "that conditions in the various counties are such as to preclude uniformity of treatment in relation to the administration of school affairs." [209 S. C. 19, 39 S. E. (2d) 137.] We must assume, in the absence of any showing to the contrary, that there was a rational basis for the exclusion.

It is also argued that the statute is invalid as unlawfully discriminating against the children of parents who own property only in the district in which they reside. The privilege allowed a parent residing in one school district to enroll his children in an adjoining school district if he owns and pays taxes on property in the latter district is no doubt based on the fact that in paying such taxes he contributes to the cost of the maintenance of the schools where his property is located. We cannot say there is no rational basis for the privilege given by this statute.

We think the Court further erred in holding that this proviso is invalid because "it adds to the statute matter utterly inconsistent with the original subject matter thereof." It would unduly lengthen this opinion to summarize all of the terms and provisions in Section 5346 of the 1942 Code. It is sufficient to say that we find no basis for the conclusion that the proviso in controversy is wholly inconsistent with that portion of Section 5346 which precedes it.

The next question is whether the children of intervenors are entitled to the privilege of public transportation in attending the school at Kingstree. It appears that these children are now riding on school buses already engaged in transporting high school and other students to Kingstree, which are concededly lawfully operated, and that the transportation of intervenors' children entails no additional expense and causes no deviation from the assigned routes. The record further discloses that the costs of operating these buses are paid from general county

school funds and from transportation funds allotted by the State, and that no part thereof is borne by the Salters School District. Under these circumstances, we do not think that the transportation of intervenors' children results in a detriment to any taxpayer of Salters School District. We see no substantial basis for respondents' complaint but in any event, it would come within the principle of *de minimis non curat lex*. We do not undertake to determine whether under different circumstances intervenors would be entitled to require the transportation of their children to Kingstree at public expense.

We now turn to respondents' contention that Salters School District No. 32 and Kingstree School District No. 16 do not adjoin within the contemplation of the statute. The Court below concluded "that the only place where the two districts touch is for a short distance in the swamp of Black River where the boundary line between the two districts is the center of the river"; "that at such point of contact they are separated not only by the stream of the river itself but also by an impenetrable river swamp four and a half miles wide lying on the Salters side of the river"; and that the only method of travel between the two districts is by public highways leading through other school districts, making a distance from Salters to Kingstree of approximately ten miles. The Court held that under these circumstances the two school districts did not adjoin. We think the Court erred in so holding.

In *Bullock v. Cooley, District Superintendent*, 225 N. Y. 566, 122 N. E. 630, 631, the Court had under consideration a statute which authorized the district superintendent of schools to dissolve a school district and unite its territory "to any adjoining school district". It was held that two school districts in New York State adjoined within the meaning of this statute although they were separated by water of a harbor from a half mile to a mile in width. The Court stated that the land under such water should be

deemed a part of such school districts. Also, see *White v. City of Decatur*, 225 Ala. 646, 144 So. 873, 86 A. L. R. 914; *State ex rel. Boynton, Attorney General, v. Bunton*, ·141 Kan. 103, 40 P. (2d) 326; 2 C. J. S., Adjoin, p. 1.

No good reason appears why the word "adjoining" as used in the statute under consideration should not be given its commonly accepted meaning of being in contact with or of touching at some point. The fact that an area consists of an inmpenetrable swamp does not have the effect of excluding it from the school districts of this state. Our Constitution and statutes clearly contemplate that the entire state should be divided into school districts.

It is suggested, however, that there is no exception raising the question just discussed but we think exception four is sufficient for this purpose.

The final question for determination involves the doctrine of *res judicata*. Respondents contend, and the Court below held, that the question of whether the intervenors were entitled to send their children to the Kingstree school was settled and adjudicated by the orders of Judges Mann and Martin. It is true that the order of Judge Mann, as construed by Judges Martin and Greneker, was to the effect that the grammar school children residing in the Salters School District, other than those so situated as to be better accommodated at the school of an adjoining school district, must attend the school at Salters and that their parents were not entitled to send them to school at Kingstree. There was no appeal from these orders. The intervenors were not parties to these proceedings but we shall assume, as respondents contend, that they were represented through the trustees of the Salters School District and the County Board of Education who were parties to that litigation. The estoppel of the orders or judgments rendered by Judges Mann and Martin would undoubtedly extend to the facts as they existed at that time. But since then new facts have occurred which alter the legal rights of

the litigants. Six months or more after the order of Judge Martin was passed, each of the intervenors acquired real estate in Kingstree School District No. 16 upon which he pays taxes. Under the statute heretofore discussed giving the right of a parent residing in one school district to send his children to an adjoining school district in which he owns property and pays taxes, the acts of the intervenors in acquiring property in the Kingstree School District created a new right which was not in existence and could not have been litigated at the time the orders of Judges Mann and Martin were rendered. The applicable rule is stated in 30 Am. Jur., Judgments, Section 206, page 943, as follows: "The mere change of facts subsequent to the rendition of a judgment does not necessarily affect the operation of such judgment under the doctrine of *res judicata*. This rule clearly prevails in the case of immaterial facts arising subsequent to the rendition of the judgment. Moreover, the enforcement of the rule of *res judicata* may not be avoided by the discovery of new evidence bearing on a fact or issue involved in the original action, as distinguished from a subsequent fact or event, which creates a legal situation. However, where, after the rendition of a judgment, subsequent events occur, creating a new legal situation or altering the legal rights or relations of the litigants, the judgment may thereby be precluded from operating as an estoppel. In such case, the earlier adjudication is not permitted to bar a new action to vindicate rights subsequently acquired. In this connection, it has been declared that a judgment is not *res judicata* as to rights which were not in existence at the time of the rendition of the judgment."

Also, see *Chick Springs Water Co. v. State Highway Department*, 178 S. C. 415, 183 S. E. 27; 50 C. J. S., Judgments, § 712, p. 180.

We think it is clear under the above authorities that the plea of *res judicata* cannot be sustained.

■ It is argued that the intervenors acquired property in the Kingstree School District for the sole purpose of enabling them to send their children to the schools at Kingstree. This may be true but it does not change the result. They had the right to avail themselves of the privilege given by the statute. The suggestion is also made that the property owned by each of the intervenors is of comparatively small value upon which the yearly tax is only three or four dollars. But the Legislature has not seen fit to make the right given by this statute dependent either upon owning property of a certain value or upon holding it for any specified period. We are not at liberty to add to the statute any conditions of this nature. These are considerations that must be addressed to the law making body.

It follows from the foregoing conclusions that the intervenors are entitled to send their children to the schools at Kingstree. So much of the order appealed from as denied that right is reversed, all of appellants' exceptions are sustained, and the case is remanded for further proceedings in accordance with the views herein expressed.

BAKER, C. J., and STUKES and TAYLOR, JJ., concur.

LIDE, Acting Associate Justice, not participating.