504 S.E.2d 112

**BIBCO CORPORATION, Appellant,**

**v.**

**CITY OF SUMTER, Respondent.**

**No. 24825.**

Supreme Court of South Carolina.

Heard May 14, 1998.

Decided July 27, 1998.

M.M. Weinberg, Jr. and M.M. Weinberg, III, both of Weinberg and Brown, Sumter, for appellant.

Charles E. Carpenter, Jr. and S. Elizabeth Brosnan, both of Richardson, Plowden, Carpenter and Robinson, Columbia; and Jack W. Erter, Jr., of Lee, Wilson, Erter & Holler, Sumter, for respondent.

TOAL, Justice:

This case requires us to review a ruling by the City of Sumter ("City") denying a request by Bibco to change the zoning classification of real property owned by Bibco within the city. Bibco appealed City's ruling to the circuit court. The circuit court dismissed Bibco's appeal, finding it lacked merit. Bibco appeals. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

On March 20, 1996, Bibco filed with City an Application for

Zoning Reclassification.[1]   Bibco sought to rezone over 90 acres of its property in Sumter from a Residential–9 ("R–9") classification to a General Residential ("GR") classification so that it could place double-wide mobile homes on its land.[2]

Bibco's application was initially reviewed by the Sumter Planning Commission Staff.   The Staff recommended that Bibco's application be denied.   A public hearing was held before the Sumter City–County Planning Commission on April 24, 1996.   The Commission concluded that Bibco's application should be denied, stating that GR zoning would be incompatible with the R–15 zoning which surrounds three sides of Bibco's property.   The Commission forwarded its recommendation to City Council.

A final public hearing was held before the Sumter City Council on May 21, 1996.   Based on its local zoning ordinance, City Council unanimously voted to deny Bibco's application. Bibco appealed to the circuit court, challenging the denial of its application on two grounds: (1) the local zoning ordinance was preempted by federal law, and (2) application of the ordinance to mobile homes violated equal protection.[3]   The circuit court disagreed, dismissing Bibco's appeal.

Bibco appeals to this Court raising the following issues:

A.   Did the circuit court err in ruling that the Sumter zoning ordinance was not preempted by the National

---

1.   Prior to August 1995, Bibco's property was zoned as Residential–15. On August 1, 1995, City approved Bibco's request to reclassify its property as Residential–9.

2.   Under the Sumter zoning ordinance, residential districts are classified as either Residential–15, Residential–9, Residential–6, In–Town Residential District, Residential Multi–Family District, or General Residential.   Mobile homes are only permitted in districts zoned as General Residential.

3.   We note that this appeal originally arose from City's denial of Bibco's application to rezone its property from R–9 to GR.   However, Bibco's arguments before the circuit court related to the constitutional validity of R–9 zoning, not whether City properly denied Bibco's rezoning application.   Though styled as an appeal in the circuit court, this case really involves a direct attack on City's exclusion of mobile homes via its R–9 classification rather than a review of the Sumter City Council's decision on May 21, 1996, to deny Bibco's request to rezone its property.

Manufactured Housing Construction and Safety Standards Act of 1974?

B. Did the circuit court err in ruling that the Sumter zoning ordinance did not deprive Bibco of its right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution?

## LAW/ANALYSIS

### A. FEDERAL PREEMPTION

██ Bibco argues that the restriction in City's zoning ordinance excluding mobile homes from R–9 districts is preempted by the National Manufactured Housing Construction and Safety Standards Act of 1974, codified at 42 U.S.C. § 5401 *et seq.* ("Federal Act"). We disagree.

The Federal Act was enacted by Congress "to reduce the number of personal injuries and deaths and the amount of insurance costs and property damage resulting from manufactured home accidents and to improve the quality and durability of manufactured homes." 42 U.S.C. § 5401. Congress has expressly defined the preemptive reach of the Federal Act:

Whenever a Federal manufactured home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403(d). The Federal Act's preemptive reach has been further explicated in regulations promulgated by the United States Department of Housing and Urban Development ("HUD"):

No State or locality may establish or enforce any rule or regulation or take any action that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. **The test of whether a State rule or action is valid or must give way is whether the State rule can be enforced or the action taken without impair-**

ing the Federal superintendence of the manufactured home industry as established by the Act.

24 C.F.R. § 3282.11(d) (emphasis added).

The interaction between local zoning ordinances and the Federal Act was addressed by the Eleventh Circuit Court of Appeals in *Scurlock v. City of Lynn Haven, Fla.,* 858 F.2d 1521 (11th Cir.1988). The Scurlocks attempted to place their mobile home on residentially zoned property in the city of Lynn Haven, Florida. Their mobile home was covered by the Federal Act and met the minimum standards imposed by it. However, in order to get into the zoned area, their mobile home also had to comply with other local construction and safety standards. The Eleventh Circuit found the local zoning ordinance was preempted because it ultimately imposed greater safety requirements than the Federal Act. The court noted, however, that it would be permissible to restrict a zoned area to conventionally-built residences, while excluding mobile homes altogether.

In *Texas Manufactured Housing v. City of Nederland,* 101 F.3d 1095 (5th Cir.1996), the Fifth Circuit addressed an ordinance which regulated the placement of "trailer coaches" within the city limits. Under the ordinance, a home covered by the Federal Act ("HUD-code manufactured home") was considered a trailer coach and, therefore, was excluded from the zoned area. In finding no federal preemption, the court observed that plaintiffs had failed to present any evidence that the placement of a HUD-code manufactured home in a residential zone was conditioned upon compliance with any local or State construction or safety standard.

In this case, City, through its zoning ordinance, excludes mobile homes from R–9 districts. However, structures defined as "modular homes" are permitted into such districts if they comply with the South Carolina Modular Buildings Construction Act, S.C.Code Ann. § 23–43–10 *et seq.* Bibco argues that the only difference in the definition of a mobile home and a modular home under City's ordinance is the method of construction of the mobile home. This, Bibco argues, is an attempt to dictate State construction standards for HUD-code manufactured homes.

Bibco's argument must fail for the simple reason that City's ordinance does not impose any construction or safety standard on mobile homes. The ordinance simply distinguishes between structures built on a permanent chassis and those that are not and excludes the former from R–9 residential districts. Bibco's attempt to characterize this distinction as a construction standard is unavailing.

City's ordinance defines "mobile home" in the following manner:

> A mobile home is a transportable structure of one or more sections **built on a permanent metal chassis** and designed to be towed. The term "mobile home" as used in this Ordinance shall not include prefabricated, modular, or unitized dwellings placed on permanent foundations, nor shall it include travel trailers, motor homes, campers, or similar units designed for recreation or other short term uses.

(emphasis added). Sumter's definition of mobile home tracks the Federal Act's definition of *manufactured home,* which provides in pertinent part: " 'manufactured home' means a structure, transportable in one or more sections ... and which is built on a permanent chassis...." 42 U.S.C. § 5402(6).[4] Thus, a HUD-code manufactured home would be considered a "mobile home" under City's ordinance.

As for a "modular home," City's ordinance supplies the following definition:

> A building including the necessary electrical, plumbing, heating, ventilating, and other service systems, manufactured off-site and transported to the point of use for installation or erection, with or without other specified components, as a finished building and **not designed for ready**

---

4. The federal definition of manufactured home provides in full:

   "manufactured home" means a structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or, when erected on site, is three hundred twenty or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and including the plumbing, heating, air-conditioning, and electrical systems contained therein; except that such term shall include any structure which meets all the requirements and with respect to which the manufacturer voluntarily files a certification required by the Secretary and complies with the standards established under this chapter.

**removal to another site.** This term is not to be limited to residential dwellings. When meeting the requirements of the Modular Building's [sic] Construction Act (23–43–10 of the South Carolina Code of Laws), said building or structure may be located in any of the county's several zoning districts.

This is in contrast to a mobile home which, under City's ordinance, is a structure built on a permanent chassis and, therefore, designed for ready removal. The effect of the ordinance is to exclude from R–9 districts *all* mobile homes built on a permanent chassis, i.e., HUD-code manufactured homes. In other words, Bibco's mobile homes are excluded from R–9 districts not because they fail to comply with some State construction or safety standard but because they are built on a permanent chassis and designed to be towed. This exclusion is permissible under *Scurlock.*

We conclude that City's differentiation between mobile homes and modular homes does not impair the federal superintendence of the manufactured home industry. Thus, there is no federal preemption.

### B. EQUAL PROTECTION

██ Bibco argues that Sumter's ordinance, as applied in this case, violates the Federal Equal Protection Clause in that there is no rational basis to allow modular homes into the zoned area, while at the same time excluding mobile homes. We disagree.

██ A municipal ordinance is a legislative enactment and is presumed to be constitutional. *Town of Scranton v. Willoughby,* 306 S.C. 421, 412 S.E.2d 424 (1991). The burden of proving the invalidity of a zoning ordinance is on the party attacking it, and it is incumbent on the attacking party to show the arbitrary and capricious character of the ordinance through clear and convincing evidence. *Id.*

██ The Equal Protection Clause proclaims, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. If there is no suspect or quasi-suspect class and no fundamental right is involved, zoning ordinances should be tested under the "rational basis" standard. *Haves v. City of Miami,* 52 F.3d 918 (11th Cir.1995). There are three steps in determining

whether an ordinance survives rational basis scrutiny under the Equal Protection Clause: (1) whether plaintiff was treated differently than others similarly situated; (2) whether defendant intentionally discriminated against plaintiff and had a rational basis for doing so; and (3) whether the discrimination/classification bears a rational relationship to a legitimate government purpose or goal. *Baggs v. City of South Pasadena*, 947 F.Supp. 1580 (M.D.Fla.1996); *accord Peoples Program for Endangered Species v. Sexton*, 323 S.C. 526, 476 S.E.2d 477 (1996).

In determining whether there is a legitimate government purpose, the actual motivations of the enacting governmental body are entirely irrelevant. A reviewing court need only decide what goals the government body could have been pursuing. *Haves v. City of Miami*, 52 F.3d 918 (citing *F.C.C. v. Beach Communications*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

In addition to the purpose stated in the ordinance—preserving land for low density, single-family dwellings—City offers the following justifications for excluding mobile homes from certain residential districts in Sumter: protection of surrounding property values, guarding against increased crime, guarding against increased traffic flow and congestion, and maintaining aesthetics. Other courts have sustained the exclusion of mobile homes from residential districts based on these and other concerns. *See Texas Manufactured Housing Ass'n*, 101 F.3d 1095 (affirming the grant of summary judgment where it was "at least debatable" that zoning protected surrounding property values); *Clark v. Winnebago Co.*, 817 F.2d 407 (7th Cir.1987) (regulating population density); *Colby v. Hurtt*, 212 Kan. 113, 509 P.2d 1142 (1973) (concern that mobile homes might stunt growth of city); *Duggins v. Town of Walnut Cove*, 63 N.C.App. 684, 306 S.E.2d 186 (1983) (protection of value of surrounding homes); *Brookside Village v. Comeau*, 633 S.W.2d 790 (Tex.1982) (concerns about potential waste and sewage problems).

In the instant case, Bibco relies upon *Cannon v. Coweta County*, 260 Ga. 56, 389 S.E.2d 329 (1990) in arguing Sumter's ordinance violates equal protection. In *Cannon*, an ordinance excluded mobile homes from all residential zones except manufactured-home parks. The Georgia Supreme Court concluded

that the ordinance violated substantive due process because it was arbitrary and unreasonable. The court found the party challenging the ordinance satisfied its burden of proof based on evidence that there was a public need for manufactured housing in residential districts; that the modern manufactured home is as safe and attractive as site-built housing; that manufactured homes do not devalue nearby site-built homes; and that manufactured homes should not, if valued properly, adversely affect the county's tax base. *Cannon,* 389 S.E.2d at 331.

We find that Bibco has not shown through clear and convincing evidence that City's ordinance is arbitrary and capricious as applied to mobile homes. In this case, unlike *Cannon,* mobile homes are not excluded from all residential districts. They are merely limited to General Residential districts. Moreover, in *Town of Scranton,* 306 S.C. 421, 412 S.E.2d 424, we upheld a municipal ordinance even more restrictive than the one challenged in this case. There, the municipal ordinance excluded mobile homes from all areas except mobile home districts.

## CONCLUSION

Based upon the foregoing, we **AFFIRM** the trial court's ruling on both issues.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.