530 S.E.2d 112

C. Dixon LEE, III; T. Moffat Burris, Jr.; A.E. Johnston, III; and David W. Nichols, Respondents,

v.

SOUTH CAROLINA DEPARTMENT OF NATURAL RESOURCES, Appellant.

No. 25095.

Supreme Court of South Carolina.

Heard Oct. 7, 1999.

Decided March 27, 2000.

Rehearing Denied April 20, 2000.

464

Buford S. Mabry, Jr., and James A. Quinn, both of South Carolina Department of Natural Resources, for appellant.

Brooks P. Goldsmith, of Lancaster, for respondents Lee and Burris.

James W. Bannister, of Greenville, for respondents Johnston and Nichols.

MOORE, Justice:

Respondents Lee and Burris brought a declaratory judgment action against South Carolina Department of Natural Resources (Department) challenging the validity of statutes and regulations prohibiting the hunting of "big game" (turkey, deer, and bear) on Sunday in eighteen Upstate counties. The circuit court granted summary judgment to respondents on the issues relating to deer and turkey hunting. We reverse.

## FACTS

Respondents Lee and Burris are hunters who want to hunt big game on Sunday on land each owns in Newberry and Fairfield Counties. However, hunting big game on Sunday on privately owned property in eighteen Upstate counties, including Newberry and Fairfield counties, is prohibited.[1] *See*

---

1. The state is divided into eleven game zones. The region at issue in this case, which we refer to as the "eighteen Upstate counties," is comprised of Game Zones 1, 2, and 4. Game Zone 1 (Mountain Hunt Unit) consists of Greenville, Oconee, and Pickens counties north of the Norfolk–Southern railroad. Game Zone 2 (Western Piedmont Hunt Unit) consists of Abbeville, Anderson, Edgefield, Greenwood, Laurens, Newberry, McCormick, and Saluda counties, south of Norfolk–Southern railroad. Game Zone 4 (Central Piedmont Hunt Unit) consists of Cherokee, Chester, Fairfield, Lancaster, Spartanburg, Union, and York counties.

S.C.Code Ann. § 50–9–510(9) and (10) (Supp.1998) (describing big game as deer, turkey, and bear); S.C.Code Ann. § 50–11–310(A)(1) and (2) (Supp.1998) (establishing season for taking antlered deer in the eighteen Upstate counties, with Sundays excepted); S.C.Code Ann. § 50–11–530 (Supp.1998) (granting Department authority to prescribe methods and areas in which turkeys may be hunted); 27 S.C.Code Ann.Reg. 123–40(2.8) (prohibiting Sunday hunting of deer, turkey, and bear in the eighteen Upstate counties).[2] Hunting of big game *is allowed* on Sunday on privately owned property in the state's remaining twenty-eight counties because no statute or regulation prohibits it.

Department contends the circuit court erred in ruling that statutory and regulatory prohibitions on Sunday hunting of big game in the eighteen Upstate counties violate: 1) equal protection and 2) the special laws provision of the state constitution.

## ISSUES

1) Did the circuit court err in ruling that the statutory and regulatory prohibitions on Sunday hunting violate equal protection?

2) Did the circuit court err in ruling that the statutory and regulatory prohibitions on the hunting of big game violate the special laws provision of the state constitution?

## DISCUSSION

1) Equal protection

■ The privilege to hunt big game is not a fundamental right or a suspect class requiring strict or intermediate scrutiny of Department's asserted reasons for the Sunday ban. Therefore, we must give only minimal scrutiny to the challenged statutes and regulations and decide whether a rational

---

2. The General Assembly amended § 50–11–310 in 1997 to explicitly ban Sunday hunting of antlered deer in the eighteen Upstate counties after respondents filed their lawsuit. 1997 S.C.Act Nos. 33 and 57. The amendments gave Department explicit authority to "promulgate regulations ... to establish methods for hunting and taking of deer and for other restrictions for hunting and taking deer" in the eighteen Upstate counties. S.C.Code Ann. § 50–11–310(D) (Supp.1998).

basis exists for them. *Bibco Corp. v. City of Sumter,* 332 S.C. 45, 52, 504 S.E.2d 112, 116 (1998) (when a case does not involve a suspect or quasi-suspect class, or a fundamental right, the statute or ordinance should be tested under the rational basis standard). The General Assembly may enact different laws in different geographical areas without violating the Equal Protection Clause, provided there is a rational basis for the distinctions. *See Moseley v. Welch,* 218 S.C. 242, 250, 62 S.E.2d 313, 317 (1950) (equal protection clause does not require statute to apply equally to all areas of the state).

 To satisfy the Equal Protection Clause, a classification must (1) bear a reasonable relation to the legislative purpose sought to be achieved, (2) members of the class must be treated alike under similar circumstances, and (3) the classification must rest on some rational basis. *D.W. Flowe & Sons, Inc. v. Christopher Constr. Co.,* 326 S.C. 17, 23, 482 S.E.2d 558, 562 (1997) (citing *Jenkins v. Meares,* 302 S.C. 142, 394 S.E.2d 317 (1990)). A legislative enactment will be sustained against constitutional attack if there is "any reasonable hypothesis" to support it. *Id.* (citing *Thomas v. Spartanburg Ry., Gas & Elec. Co.,* 100 S.C. 478, 85 S.E. 50 (1915)).

 We must give great deference to the General Assembly's classification decisions because it presumably debated and weighed the advantages and disadvantages of the legislation at issue. Further, "[t]he classification does not need to completely accomplish the legislative purpose with delicate precision in order to survive a constitutional challenge." *Foster v. South Carolina Dep't of Highways and Pub. Transp.,* 306 S.C. 519, 526, 413 S.E.2d 31, 36 (1992).

 The Department offers several reasons in support of the Sunday hunting ban in the Upstate.

(a) Difficulty of Enforcement

Department contends it would be difficult, if not impossible, to enforce the statewide ban on Sunday hunting on Wildlife Management Areas (WMA) lands in the eighteen Upstate counties if hunting is allowed on adjacent private properties. We agree.

WMA lands in the Upstate counties typically are numerous small areas scattered among private parcels. The average size of the 1,275 WMA tracts in the Piedmont is 259 acres. In contrast, WMA lands in Pee Dee and Lowcountry counties are substantially larger and less scattered among private parcels. The average size of the 82 WMA tracts in the Pee Dee is 1,412 acres, while the average size of the 258 WMA tracts in the Lowcountry is 1,934 acres. Thus, it is easier to enforce the Sunday hunting ban on WMA lands in the Lowcountry and Pee Dee counties, while still allowing Sunday hunting on private property, because the contiguous WMA lands are more readily identifiable. While some Pee Dee or Lowcountry WMA parcels may be non-contiguous, Department's conclusions about the general nature of the hunting grounds across the state and difficulty of enforcement in the Upstate are valid and rational.

Furthermore, the Sunday hunting ban bears a reasonable relation to the legislative purpose of the enforcement of big game hunting laws. While Department must enforce the Sunday ban on WMA lands against small-game hunters, the addition of big-game hunters would exponentially increase the difficulty of that job in the Upstate.

(b) Preservation of Finite Wildlife Resources

Department contends the Sunday ban in the Upstate counties is necessary to preserve finite wildlife resources and the continuation of quality hunting experiences.

Department's figures show that 39 percent of the deer taken in the state in 1996 were taken in the eighteen Upstate counties, even though those counties contain less than half the land area of the remaining twenty-eight counties. In addition, the number of deer taken in the Upstate counties increased a "dramatic" 46 percent from 1990 to 1996, while the number of deer taken in the remaining counties was relatively stable from 1990 to 1995.

Department asserts that turkeys are hunted during their breeding season because that is when they are the most active and most likely to respond to hunters' calls. However, the smaller land ownership patterns and large number of hunters in the Upstate result in substantial disturbances of the turkey

population. To combat those disturbances, Department contends banning hunting one day a week during the season will increase the chances of successful breeding and continued propagation of the species—a goal shared by Department and most hunters.

The Sunday ban bears a reasonable relation to the legislative purpose of preserving finite wildlife resources and quality hunting experiences. Upstate counties have had to be restocked in years past, often with wildlife from the Lowcountry. The popularity of deer hunting in the Upstate has outpaced the rest of the state, resulting in greater pressure on finite resources.

Contrary to respondents' assertion, numerous studies by Department's experts and others have shown that increased human activity adversely affects turkey behavior, including nesting activities.[3] Limiting human activity and the hunting of big game, even if only for a day, is likely to further these proper goals.

(c) Other Recreational Users

Department contends the Sunday ban gives other recreational users—hikers, bird watchers, photographers, and other non-hunters—a chance to enjoy the outdoors without hearing the large-caliber gunshots of a big game hunter or being accidentally shot by a big game hunter. Department contends Sunday is the logical choice because it follows Saturday, the busiest hunting day, and is also a day of the week when many people do not work and would be most likely to take advantage of the outdoors.

The Sunday ban bears a reasonable relation to the legislative purpose of the creation of more opportunities for non-hunters to enjoy the outdoors in relative peace. *Cf. Timmons v. South Carolina Tricentennial Comm'n*, 254 S.C. 378, 393, 175 S.E.2d 805, 812 (1970) (stating in appeal of condemnation proceeding that "[p]ublic health, recreation and enjoyment are recognized public uses" under law of eminent domain). While

---

3. The dissent misses the point of this argument. It is not necessary that turkeys be capable of acknowledging the days of the week. Turkeys need only be aware that there is less activity and gunshots which would encourage propagation and advance the Department's goal.

other users may be bothered by small-game hunters or target practice, the addition of a substantial number of big-game hunters carrying larger guns would increase the disturbance and likelihood of accidents.

■ In sum, we find reasons discussed above bear a reasonable relationship to the legislative purposes, and the Sunday ban rests on several rational bases.[4] Respondents have failed to prove an equal protection violation, given the minimal level of scrutiny we must use in reviewing Department's reasons for the Sunday ban.

As to whether members of the designated class are treated equally, we believe they are. Members of the designated class in this case, those who wish to hunt in the Upstate counties, are treated alike under similar circumstances. *See Eli Witt Co. v. City of West Columbia*, 309 S.C. 555, 425 S.E.2d 16 (1992). Accordingly, we hold the circuit court erred in finding an equal protection violation.

### 2) Special laws

■ Department contends the circuit court erred in ruling that statutory and regulatory prohibitions on the hunting of

---

4. Contrary to the dissent's assertions, in determining whether there is a legitimate government purpose, the actual motivations of the enacting governmental body are entirely irrelevant. *Bibco Corp. v. City of Sumter, supra.* Those attacking the validity of the legislation have the burden to negate every conceivable basis which might support it. *Federal Communications Comm'n v. Beach Communications Inc.*, 508 U.S. 307, 314, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993). Moreover, because we do not require the legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. *Id.* "In fact, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function." *Id.* (quoting *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 510, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937)). "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.* (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171 (1979)).

big game in the eighteen Upstate counties violate Article III, Section 34, of the state constitution. We agree.

The circuit court misapplied *Martin v. Condon*, 324 S.C. 183, 478 S.E.2d 272 (1996). In that case, no constitutional provision allowed individual counties to decide whether playing video poker would be criminal. Section 34 prohibits special laws on the protection of game—*except* that special laws may be enacted within each game zone. Thus, Section 34 allows different regulations within the various zones. We have said as much in the rehearing order in *Martin*, stating that "[i]t is axiomatic that the prohibition against special laws found in article III, § 34(IX), of our constitution does not apply where another constitutional provision specifically authorizes a special law." *Martin*, 324 S.C. at 197, 478 S.E.2d at 279.

Based upon the above discussion, we believe the ban is rationally related to the protection of game. Accordingly, we reverse the circuit court.

**REVERSED.**

FINNEY, C.J., and BURNETT, J., concur.

WALLER, J., and Acting Associate Justice THOMAS E. HUFF dissenting in a separate opinion.

WALLER, Justice:

I respectfully dissent. I would affirm the grant of summary judgment to respondents Lee and Burris because the ban on Sunday hunting in eighteen Upstate counties violates the Equal Protection Clause of the state and federal constitutions.

It is undisputed that wild game and fish belong to no one in particular. Courts have classified them either as the property of the State or as being held in trust by the State for the benefit of the people as a whole. Thus, while every landowner has a right to hunt and fish on his or her property, that right is subject to reasonable governmental regulation. *Rice Hope Plantation v. South Carolina Pub. Serv. Auth.*, 216 S.C. 500, 524, 59 S.E.2d 132, 142 (1950), *overruled on other grounds*, *McCall by Andrews v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985); *Begay v. Sawtelle*, 53 Ariz. 304, 88 P.2d 999, 1000 (1939). "The wild game within a state . . . is not the subject of private ownership, except in so far as the people may elect to

make it so; and they may, if they see fit, absolutely prohibit the taking of it, or traffic or commerce in it, if it is deemed necessary for the protection or preservation, of the public good." *Michigan v. Zimberg,* 321 Mich. 655, 33 N.W.2d 104, 105 (1948).

Governmental regulation, however, may not violate equal protection guarantees, which provide that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1; *accord* S.C. Const. art. I, § 3; *Baldwin v. Fish & Game Comm'n of Montana,* 436 U.S. 371, 391, 98 S.Ct. 1852, 1864, 56 L.Ed.2d 354, 370 (1978) ("[s]o long as constitutional requirements have been met, . . . [p]rotection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection"); *Begay v. Sawtelle,* 88 P.2d at 1000 (the State may regulate the "taking or killing and use of any and all kinds of game in any part of the state, and during any period, and upon any reasonable terms, so long as such regulation does not deny due process of law and equal protection of law").

We often state, as the majority does in this case, that the party asserting the unconstitutionality of a statute or regulation has the burden of proving the classification is essentially arbitrary and without any reasonable basis. *Foster v. South Carolina Dep't of Highways and Pub. Transp.,* 306 S.C. 519, 526, 413 S.E.2d 31, 36 (1992). While true, that statement is somewhat misleading. Given that it often is impossible to absolutely demonstrate a negative proposition, a party may meet this burden by successfully attacking the reasons asserted in support of a statute or regulation. *See Southern Bell Tel. and Tel. Co. v. City of Spartanburg,* 285 S.C. 495, 331 S.E.2d 333 (1985) (placing burden of proof upon telephone company, but finding equal protection violation where city failed to advance any rational basis for business license ordinance that taxed telephone company at higher rate than other businesses); *Casey v. Richland County Council,* 282 S.C. 387, 320 S.E.2d 443 (1984) (finding equal protection violation where county failed to offer a rational basis for imposing surcharge on residents who would not benefit from new sewer system because they already received sewer service from other systems); *see also Demmert v. Kootznoowoo, Inc.,* 960 P.2d 606,

610 (Alaska 1998) (recognizing in discussion of summary judgment issue that proof needed to show the affirmative of a proposition is often different, and more limited, than proof needed to show the negative of the same proposition).

In this case, the Legislature and Department have established two classes of people: hunters in the eighteen Upstate counties who *may not* hunt big game on Sunday on their private property and hunters elsewhere in the state who *may* hunt big game on Sunday on their private property.

I agree with the majority that we must give minimal scrutiny to the challenged statutes and regulations because the right to hunt big game is not a fundamental right or a suspect class requiring strict or intermediate scrutiny. However, I do not believe Department's asserted reasons for the Sunday hunting ban in the Upstate can withstand even minimal scrutiny.

## A. DIFFICULTY OF ENFORCEMENT IN UPSTATE

During various hunting seasons, "[n]o Sunday hunting is permitted on any [Wildlife Management Area] lands" throughout the state. 27 S.C.Code Ann.Reg. 123–40(2.8) (1992). WMA lands consist of property owned or leased by Department, or privately held property that an owner voluntarily has placed in the program. Hunting on WMA lands is allowed only under regulations governing those lands. S.C.Code Ann. § 50–11–2200 (Supp.1999); 27 S.C.Code Ann.Reg. 123–40.

Department contends it would be difficult or impossible to enforce the statewide ban on Sunday hunting on WMA lands in the eighteen Upstate counties if hunting were allowed on adjacent private properties. Department asserts it is easier to enforce the Sunday hunting ban on WMA lands in the Lowcountry and Pee Dee counties, while still allowing Sunday hunting on private property.

I find Department's reasoning utterly unpersuasive. Department must enforce other laws and regulations on Sunday on private and WMA lands in the Upstate counties. Department must, for example, prevent small-game hunting on WMA lands on Sunday while allowing it on private property.[1] Fur-

---

1. During the hunting season applicable to each species, hunting of small game is allowed on Sunday on privately owned property in all

thermore, some WMA lands in the remaining twenty-eight counties are scattered among private parcels just like the Upstate. Enforcement is as difficult in those areas as it is in the Upstate counties. Thus, the Sunday hunting ban does not bear a reasonable relation to the asserted legislative purpose—the enforcement of hunting laws. Similarly, Department's stated reason that enforcement is more difficult in the Upstate does not provide a rational basis for the ban.

## B. PRESERVATION OF FINITE WILDLIFE RESOURCES AND QUALITY HUNTING EXPERIENCES

The hunting season for deer in the eighteen Upstate counties lasts about three months in the fall and winter. S.C.Code Ann. § 50–11–310(A)(1) and (2) (Supp.1999); 27 S.C.Code Ann.Reg. 123–40(1.2) (Supp.1999). The turkey hunting season in the Upstate counties is set annually by Department and lasts about one month in the spring. S.C.Code Ann. § 50–11–530 (Supp.1999).

Department argues the Sunday hunting ban in the Upstate counties is necessary to preserve finite wildlife resources and the continuation of quality hunting experiences. Turkeys are hunted during their breeding season because that is when they are the most active and most likely to respond to hunters' calls. Department, although allowing Sunday hunting of turkeys on private property in the remainder of the state, asserts that turkeys in the eighteen Upstate counties need a day of rest from disturbances related to Sunday hunting. Department contends this will increase the chances of successful breeding and continued propagation of the species in the Upstate counties. Department concedes it has no evidence the Sunday ban furthers deer propagation.[2]

---

counties because no statute or regulation prohibits it. *See* S.C.Code Ann. § 50–11–110 (Supp.1999) (listing species defined as small game, which includes raccoon, opossum, rabbit, squirrel, fox, and quail); S.C.Code Ann. § 50–11–120 (Supp.1999) (establishing hunting seasons for small game in various game zones); 27 S.C.Code Ann.Reg. 123–40(2.8) (1992) (stating that small game may be hunted on Sunday on private lands during the regular game zone seasons in the eighteen Upstate counties).

2. Deer overpopulation is a growing problem in areas of South Carolina that are changing from rural to urban. At least 3,400 deer-vehicle

I find Department's reasoning utterly unpersuasive. The Sunday hunting ban does not bear a reasonable relation to the asserted legislative purposes—preserving finite wildlife resources and quality hunting experiences. Deer are admittedly abundant throughout the state. As for turkeys, a shorter turkey season would reduce disturbances and accomplish the same asserted purposes of the Sunday ban. Granting turkeys one day of peace each week is not reasonably related to the purposes because, although every hunter knows how clever and elusive wild turkeys can be, I question whether they are capable of realizing they do not have to fear being hunted because, "Hurrah! Today is Sunday!"[3] Department's contention is simply too tenuous to bear a reasonable relation to the asserted purposes. Similarly, Department's asserted purposes may be reasons for the Sunday ban, but those reasons do not rise to the level of rational bases. ·

## C. MORE TIME FOR OTHER RECREATIONAL USERS

Department asserts the Sunday hunting ban gives other recreational users—hikers, bird watchers, photographers, and other non-hunters—a chance to enjoy the great outdoors with less chance of hearing the gunshots of a big game hunter or, far worse, getting accidentally shot by a big game hunter.

I find Department's reasoning utterly unpersuasive. Small-game hunters or target shooters on private property, perhaps using large-caliber weapons, would disturb other recreational

collisions occurred in 1999, killing four people and injuring 320. Deer frequently are seen wandering through urban neighborhoods around Columbia, and they often ruin home gardens. Other urban areas have experienced similar problems. John Monk, *In Back Yards and on Back Roads, S.C. Faces a White–Tailed Dilemma*, The State, February 20, 2000, at B1. The article also discusses potential "gun hazards" caused by careless hunters, but indicates that, overall, deer hunting is a safe activity.

3. It is commonly believed that domestic turkeys are so lacking in mental capacity that they may panic in a rainstorm and run pell-mell into one another, where they pile up and suffocate or drown. Elizabeth Lenhard, *Rare Birds the Search for Flavors Leads to Small-scale Farms That Raise Turkeys the Natural Way*, Chicago Tribune, Nov. 17, 1999, at 1999 WL 2932951; Tom Zucco, *A Turkey of a Tradition*, St. Petersburg Times, Nov. 17, 1999, at 1999 WL 27329061. I know of no one who has encountered a wild turkey stupid enough to drown in a rainstorm. Nevertheless, wild turkeys certainly cannot read a calendar.

users in the same manner as big game hunters. A hiker bothered by or, worse, shot by a small game hunter or target shooter likely would find no solace in the fact the person toting the firearm was not a big game hunter. The firing of any weapon would shatter his peace or injure him all the same. Consequently, the Sunday hunting ban does not bear a reasonable relation to the asserted legislative purpose; nor does that purpose provide a rational basis for the ban.

In short, Department offers three carefully crafted reasons in support of its Sunday hunting ban: enforcement difficulties, preserving wildlife, and ensuring non-hunters have a chance to enjoy the great outdoors. All three appeal to the judicial mind at first glance. It is only when one pauses for a careful examination, and bends closely enough to distinguish the tenuous bases, that an exasperated sigh will bring down the entire house of cards constructed by Department.

Enforcement difficulties? Hardly. Department must enforce exactly the same laws in equally non-contiguous areas of the remaining twenty-eight counties. Preserving wildlife? Hardly. Deer overrun areas across the state and concededly do not need a weekly day of rest for propagation, and one day will do absolutely nothing to further turkey propagation. Peace for non-hunters? Hardly. A gunshot is a gunshot, regardless of the type of game sought by the hunter.

The majority did not address Department's final asserted basis for the ban—that unscientific surveys and hearings conducted by Department show the majority of hunters in the Upstate support the ban. That basis certainly is the weakest one asserted by Department.

My brethren and I undoubtedly would agree that the will of the majority is not dispositive in deciding a constitutional question. See City of Beaufort v. Baker, 315 S.C. 146, 154, 432 S.E.2d 470, 475 (1993) (recognizing that an important purpose of the constitution is to protect the few from the many) (Toal, J., dissenting). However, I believe those unscientific surveys and the impromptu comments expressed at hearings reveal an unspoken truth concealed within the twists and turns of the legal analysis in this case.

The Legislature and Department apparently have concluded it is politically and socially acceptable to impose a Sunday hunting ban in the Upstate, all the while realizing such an effort likely would meet stiff opposition should they attempt it in the Pee Dee and Lowcountry. This attitude, as well as the attitude of the majority of this Court, is a tacit acknowledgment of the widespread perception in our fair state that residents of the Pee Dee and Lowcountry place less importance on Sunday as a day of worship than our Upstate neighbors. Nothing could be further from the truth. Furthermore, I reject that attitude because, like most attempts to paint people with a broad brush of stereotypes, it misleads more than it informs. I simply refuse to accept a stereotypical view of our citizens' wishes as the driving force behind a decision upholding a classification that is so patently unconstitutional.

Hunting once was an activity necessary to sustain life in America; today it is more of a sport or hobby. Although hunters no longer must seek game to provide their family's dinner, thousands of hunters from all areas of our state still pursue the activity with a ferocious passion. Every hunter certainly is subject to statutes and regulations that are equally and fairly applied to all other hunters, but a hunter should not be subjected to laws that violate the Equal Protection Clause.

In sum, I would hold that respondents have demonstrated an equal protection violation based on an analysis of two factors discussed above—whether the Sunday hunting ban is reasonably related to a legislative purpose and whether the ban has a rational basis. Accordingly, I would affirm the trial judge's ruling on this issue. My holding would make it unnecessary to address the remaining prong of the analysis—whether members of each designated class are treated alike under similar circumstances—because a failure to meet any prong of the three-part equal protection analysis indicates a violation.

Similarly, I would find it unnecessary to address Department's argument regarding Article III, Section 34 of the state constitution, which prohibits special laws. Because I would

conclude that the Sunday hunting ban violates equal protection, whether it also violates the special laws provision would not affect the resolution of this case.

The separation and independence of each branch of government require that we go no further than absolutely necessary in declaring unconstitutional an action of the Legislature. *Stone v. Traynham*, 278 S.C. 407, 297 S.E.2d 420 (1982). Thus, a statute may be constitutional and valid in part and unconstitutional and invalid in part, and we may invalidate a separable part without impairing the remainder. *Strom v. AMVETS*, 280 S.C. 146, 311 S.E.2d 721 (1984); *Stone v. Traynham, supra*. When part of a statute is unconstitutional and another part remains complete in itself, capable of being executed wholly independent of the invalid part, and the remainder is of such a character that we may fairly presume the Legislature would have passed it independent of that portion which is in conflict with the Constitution, then we will reject the invalid portion and enforce the remainder. *Daniel v. Cruz*, 268 S.C. 11, 231 S.E.2d 293 (1977); *State v. Harper*, 251 S.C. 379, 162 S.E.2d 712 (1968).

I would strike as unconstitutional only the language pertaining to the Sunday hunting ban because the remaining provisions of the statute and regulation may stand alone. They are not so connected with the offensive provisions that the Legislature would not have passed them independently of the offensive provisions. Thus, I would strike the phrase "Sundays excepted" from S.C.Code Ann. § 50–11–310(A)(1) and (2) (Supp.1999). I would strike the following sentence from S.C.Code Ann.Reg. 123–40(2.8) (1992): "No Sunday hunting is permitted for deer, turkey, or bear within the boundaries of the Central Piedmont, Western Piedmont or Mountain Hunt Units." The remaining portions of the statute and regulation would be unaffected.

Acting Associate Justice THOMAS E. HUFF, concurs.