223 So.2d 530 (1969)
Ray BLACKLIDGE, Mrs. Ray Blacklidge, W.C. Dobbs and Mrs. W.C. Dobbs
v.
CITY OF GULFPORT, Mississippi.
No. 45510.
Supreme Court of Mississippi.
June 2, 1969.
*531 Hurlbert & O'Barr, Biloxi, for appellant.
White & White, Gulfport, for appellee.
RODGERS, Justice:
This is an appeal from an order rezoning a certain area from a residential classification to a "residential-business" classification. Mr. and Mrs. Ray Blacklidge and certain other property owners appealed from the judgment of the Circuit Court of Harrison County, Mississippi, which affirmed an ordinance of the Mayor and Board of Commissioners of the City of Gulfport, Mississippi, adopted August 9, 1968.
Ordinance No. 1121 is an amendment to a large-scale comprehensive zoning act or ordinance of the City of Gulfport, Ordinance No. 611. Ordinance No. 1121 created a new zoning classification called a "residential-business" classification. The order of the Mayor and Board of Commissioners also placed a two-block section, fronting East Beach Boulevard (Highway 90) in the City of Gulfport, within the new classification. The proceedings were instituted by some of the property owners within the area who sought to have the area rezoned from residential to "Commercial B", a zoning classification which permits almost all types of commercial activity. The Zoning Board recommended that the area, described in the petition for rezoning, be rezoned in a limited way so as to limit the commercial buildings to hotels, motels and apartment houses. After the report of the Zoning Board, the City Council instigated and enacted the amendment to the comprehensive zoning ordinance previously enacted, in which it *532 created the new "residential-business" zoning classification.
The appellants, objectors, complain on appeal to this Court that the Circuit Court erred in affirming the order of the Mayor and Board of Commissioners in adopting Ordinance No. 1121 by order of August 9, 1968, because it is said that the ordinance was arbitrary, unreasonable and capricious; that the ordinance constituted spot zoning; and that the ordinance is void because it contains two subject matters in violation of law (Mississippi Code 1942 Annotated section 3374-74 (1956)).
There is no contention that the amended ordinance was erroneous because of any procedural defects, except as to the contention that the ordinance contains two subjects. The original zoning ordinance for the City of Gulfport, Ordinance No. 611, was adopted in 1940. Since that time the original ordinance has been amended 174 times.
The testimony for proponents upon the ordinance as to the changes that have taken place in the City of Gulfport since the original ordinance of 1940 shows that the downtown business area of the City of Gulfport was a flourishing shopping center in 1940. The Markam Hotel was relatively new and provided adequate accommodations for visitors at that time. There was relatively little tourist trade. Only one hotel had adequate convention facilities. There were no modern motels. Gulfport had a population of 15,195, and Harrison County had a population of 50,799. There was very little automobile traffic along the Coast road, and there was very little industry in Gulfport in 1940. Since that time, however, the overall spectrum of the City of Gulfport and the Coast has undergone an explosive growth. In 1960 Gulfport had a population of 32,204, and the population of Harrison County had increased to 119,489. The road running along the Gulf Coast has now become one of the most traveled highway arteries of Mississippi. A 300-foot wide sand beach was constructed along the entire Coast in 1952. Gulfport's modern airport permits jet airplane service from all parts of the nation. In all of this expansion, however, Gulfport has not kept pace with the rapidly growing tourist trade along the Coast. There are very few accommodations for conventions in Gulfport, so that other cities along the Coast are drawing this trade away from Gulfport. The beach and waterfront along the Coast has become an outstanding attraction to tourists, but the beach along the Coast in Gulfport is largely owned by persons who live in homes of a past decade; and Gulfport has not enjoyed the attraction of public accommodations for tourists on the waterfront.
The first issue to consider is: Did the Mayor and Board of Commissioners act arbitrarily and unreasonably by enacting an ordinance amending the original zoning ordinance, Ordinance 611, so as to create a new classification, "residential-business", and placing the land area in question in this new classification?
The zoning or rezoning of areas in a municipality is controlled by the zoning laws of this state, beginning with Mississippi Code 1942 Annotated section 3590 (1956), and is a matter vested largely in the discretion of a municipality by the Legislature of the State of Mississippi. This Code section delegates zoning regulations to the municipal legislative bodies, "[f]or the purpose of promoting health, safety, morals, or the general welfare of the community." After the city has adopted a comprehensive zoning ordinance, an amendment to such an ordinance depends primarily upon a reevaluation of the change to the general welfare of the municipality as a whole. It is stated in W.L. Holcomb, Inc. v. City of Clarksdale, 217 Miss. 892, 65 So.2d 281 (1953), that a change in zoning involving a very few properties would only be made where new or additional facts materially affecting the merits intervene since the adoption of the original regulations, and whether to permit such change depends on whether it is reasonably related to the public *533 welfare. In the Holcomb case, supra, the property owner sought to have his property reclassified from "A" Residence District to "B" Commercial District. The property in question was part of the large residential section separated from the main business district by the Sunflower River. This Court disallowed the change in zoning. The Court pointed out that the question is whether rezoning of the property will be in the best interest and general welfare of the municipality as a whole, and not solely whether the property of the objector will be damaged or property of the proponents will be enhanced. See also Adams v. Reed, 239 Miss. 437, 123 So.2d 606 (1960).
In 58 Am.Jur. Zoning § 26 (1948), at 956-57, the textwriter points out:
"On the other hand, it is considered sufficient if the legislative body could reasonably have had considerations of public health, safety, morals, or general welfare in mind. The matter is largely within the discretion of legislative authority, which is presumed to have investigated and found conditions such that the legislation which it enacted was appropriate, so that if the facts do not clearly show that the bounds of that discretion have been exceeded, the courts must hold that the action of the legislative body is valid. In this respect, it has been declared that the municipal governing bodies are better qualified because of their knowledge of the situation to act upon these matters than are the courts, which will not substitute their judgment for that of the legislative body."
Substantially the same rule as cited above is found in our Mississippi cases. Adams v. Reed, 239 Miss. 437, 123 So.2d 606 (1960), stated that zoning is a legislative matter and the courts will not interfere or substitute their judgment, but will limit their reviews as to whether the zoning was reasonable, arbitrary, discretionary, confiscatory, or an abuse of discretion. See also Ballard v. Smith, 234 Miss. 531, 107 So.2d 580, 75 A.L.R.2d 152 (1959); City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962); Lewis v. City of Jackson, 184 So.2d 384 (Miss. 1966). The question, therefore, of whether or not there had been a change in the City of Gulfport such as requires the Mayor and Commissioners to reexamine the original comprehensive plan and zoning of the City of Gulfport so as to promote the health, safety, morals or general welfare of the community, was largely a question for the municipal authorities. After having examined the testimony in this case, we are unable to say that the Mayor and Board of Commissioners of the City of Gulfport were unreasonable, arbitrary, discriminatory, confiscatory, or that they abused their discretion in amending the old zoning ordinance in the light of the changed conditions of the City of Gulfport.
It is inevitable that the antiquated, traditional and affluent residential areas and estates of the past must give way to modern, progressive, gadget-equipped buildings of the future. The quiet life of yesterday is being swept aside and swamped by a tide of phenomenal, sudden growth. Where yesterday a fisherman pulled his little boat out on a sandy beach, today 16,000 boxes of bananas are being unloaded each hour from ocean-going ships. The quiet life of yesterday is shattered by the blating and groaning traffic piercing the veil of peaceful tranquility. There is no turning back, and those who would be in quiet serenity will eventually retreat from the battle and fatigue of modern progress. Change is inevitable. Those who guide the destiny of urban development must meet the challenge of a new era. They must stay abreast of modern times, and the hustle and bustle of this modern age. It is not only legally permissible for the municipal authorities to reexamine the zoning ordinances of their city as to necessary changes and new classifications essential to the welfare of the city, but it is their duty to do so where there is substantial evidence shown before the municipal authorities on which to base their determination. The court will not substitute its judgment for that of the municipal *534 authorities. See Ridgewood Land Co. v. Moore, 222 So.2d 378 (Miss. 1969).
Another issue raised in the briefs, which we deem necessary to discuss, is the contention of the appellants that Ordinance No. 1121 is null and void because it contains two subject matters, in violation of Mississippi Code 1942 Annotated section 3374-74 (1956). This statute is as follows:
"An ordinance shall not contain more than one subject, which shall be clearly expressed in its title; and an ordinance shall not be amended or revised unless the new ordinance contains the entire ordinance as revised, or the section or sections as amended, and the original shall thereby be repealed."
It is said that Ordinance No. 1121 contains the following two subjects: (1) the creation of a new zoning classification, "residential-business", for the city; and (2) the rezoning of a particular residential area into this new zoning classification.
An examination of the original ordinance in this case, No. 611, shows that this ordinance established six classifications and placed various areas within the City of Gulfport into one or the other of these classifications. Moreover, the original ordiance has been amended so as to add to or change various areas within the city into other classifications.
It has been said that the purpose of the law requiring a single subject in the title to an ordinance is to prevent the practice of joining in the same ordinance incongruous subjects having no relation or connection with each other, and foreign to the subject embraced in the title. See 5 McQuillin, Municipal Corporations § 16.17 (3d ed. 1949). This author also says:
"The title of an ordinance suffices, and the ordinance is valid, where objects or matters germane to the single general subject expressed by the title are united in the ordinance. Stated somewhat differently, a subject may embrace many objects; the title may state the subject and the ordinance include the objects. The word `subject' should be given a broad meaning so that all matters having a logical or natural connection are included." 5 McQuillin, Municipal Corporations § 16.19 (3d ed. 1949), at 191-93.
The issue as to two subjects in an ordinance was raised in Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960). That ordinance involved the modification of the boundaries of the city by (1) adding certain described territory, and (2) excluding other described territory. This Court in holding the ordinance valid said:
"Obviously the subject with which the above statute deals is that of altering the limits and boundaries of existing cities, towns and villages. It would seem to be an absurdity if a city, in order to accomplish the purpose of altering its boundaries by adding certain adjacent territory and excluding certain territory already included within the existing limits, would be required to adopt two different ordinances, and thus initiate at the same time two different proceedings in the chancery court." 238 Miss. at 380-81, 118 So.2d at 322.
Section 3593, Mississippi Code 1942 Annotated (1956) is in the following language:
"The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time, amended, supplemented or changed. * * *"
We are of the opinion that the proper method of enacting a zoning ordinance not only requires the municipal authorities to designate the classifications felt to be necessary but the area affected by the classification should be also described in the ordinance. Therefore, there is no merit in the contention that Ordinance No. 1121 of the City of Gulfport is void because it contains two subject matters.
*535 We are also of the opinion that the Mayor and Board of Commissioners had the authority to establish a new zoning classification by an amendment to the original comprehensive zoning ordinance, No. 611, and furthermore, that a "residential business" classification is a proper zoning classification.
Very little authority is found on this issue. Appellee cites two sources of authority, and additional research fails to reveal anything more. It is stated in 8 McQuillin, Municipal Corporations § 25.112 (1965), at 304-05:
"An ordinance may establish a `medium volume business zone,' `local business' (as distinguished from general business) zone, a combined commercial-residential use zone, or the like." (Emphasis added)
The case of City of Littleton v. Quelland, 153 Colo. 515, 387 P.2d 29 (1963), is cited in McQuillin, supra. In the City of Littleton case an attempt was made to classify six blocks fronting on a heavily traveled thoroughfare to a limited commercial use, called Zone T. The Court in that case described Zone T as one permitting limited commercial use along with high density residential uses. Involved in the case was the validity of Zone T, it being argued that a zone allowing mixed residential and commercial uses was unreasonable and therefore void. The Supreme Court of Colorado refuted this argument:
"The determination to establish various zones and various grades or degrees of the same type of zoning is within the province of the legislative branch, and the judiciary will not interfere unless there is proof beyond a reasonable doubt that the ordinance is unconstitutional. [Citations omitted]
"It has been universally held that a city can establish more than one type of commercial or business districts.
[Quoting from 8 McQuillin, supra]
* * * * * *
"There is nothing unreasonable about the officials of Littleton attempting to avoid converting Littleton Boulevard into the type of commercial strip that is prevalent on main arterial highways approaching cities, all of which sprang up before zoning. Placing low density commercial districts between high density uses so as to avoid the heavy concentration of traffic has prompted the well known gradations not only in commercial zoning but in residential as well * * *."
The obvious purpose of the new residential-business classification under the zoning ordinance in the instant case was to protect the residential area during the transition from a residential to a commercial classification, so as to limit the kinds of businesses that might be established in the residential area. The municipal authorities were attempting to adjust an area within the city to the inevitable changes being made in modern social and business activities of the municipality. We are convinced from the testimony in this record that there was substantial evidence on which the municipal authorities could have reached the reasonable conclusion that a new zoning classification was necessary to promote the general welfare of the City of Gulport.
Our examination of the record on appeal in this case reveals no reversible errors, and for that reason, the judgment of the Circuit Court should be, and it is, hereby affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.