S02A1685. KING v. CITY OF BAINBRIDGE.
(577 SE2d 772)

FLETCHER, Chief Justice.

The City of Bainbridge filed suit against Ethel King to enforce its zoning ordinance that precluded her placement of a mobile home in an R-2 residential district. King contended that the City's zoning ordinance was unconstitutional and that it was preempted by federal law. The trial court rejected these arguments and King appeals. Because the City's ordinance restricting mobile homes to mobile home parks and subdivisions is not preempted by federal law and is not unconstitutional, we affirm.

Ethel King owns a tract of land, the majority of which lies within the city limits of Bainbridge, Georgia and is zoned R-2. The City's zoning ordinance specifically excludes mobile homes from R-2 districts. In 1995, three days after placing her mobile home on her property, the City informed King that she was in violation of the City's zoning ordinance. She was also informed that the mobile home could be legally placed on a portion of her property falling outside the city limits. Instead of complying with the City's demand to move the mobile home, King installed electricity, a septic tank, and a porch, all without first obtaining the required permits or seeking an amendment to the zoning ordinance. When the City filed suit in January 1996, King defended on the basis that the zoning ordinance violated

her substantive due process rights. After a reversal by this Court on a procedural ground,[1] the trial court ultimately held that the zoning ordinance was constitutional and was not preempted by the National Manufactured Housing and Safety Standards Act of 1974 ("the Act").[2]

## Federal Preemption

The Act sets minimum standards for the construction of manufactured homes and was passed to reduce injuries, deaths, insurance costs, and property damage related to manufactured homes and to improve the quality of manufactured homes.[3] "Manufactured homes" are built on a permanent chassis,[4] and are also referred to as mobile homes in the regulations and in common parlance.[5] The regulations promulgated under the Act by the United States Department of Housing and Urban Development (HUD) require that each mobile home bear a special label certifying that it is built in compliance with HUD safety standards and has been inspected in accordance with HUD regulations.[6] The Act also recognizes "modular homes." In contrast to mobile homes, modular homes are built on a temporary chassis that is removed upon installation on a permanent foundation.[7] The Act specifically provides for the exclusion of modular homes from its coverage.[8]

The preemptive scope of the Act over safety and construction standards for mobile homes is expressly defined in the Act:

> Whenever a Federal manufactured home construction and safety standard established under this [chapter] is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of such manufactured home which is not identical to the Federal manufactured home construction and safety standard.[9]

Thus, any attempt to place higher construction standards on mobile

---

[1] *King v. City of Bainbridge*, 272 Ga. 427 (531 SE2d 350) (2000).
[2] 42 USC §§ 5401-5426.
[3] 42 USC § 5401.
[4] 42 USC § 5402 (6), 24 CFR § 3280.2.
[5] 24 CFR § 3282.8.
[6] 24 CFR § 3280.11..
[7] 42 USC § 5403 (f), 24 CFR § 3282.12.
[8] Id.
[9] 42 USC § 5403 (d).

homes than those established under the Act is invalid. However, nothing in the Act prevents localities from excluding mobile homes from certain zoning districts.

The City's zoning ordinance creates such an exclusion. Under the City's ordinance, mobile homes must bear the HUD certification label and these homes are specifically excluded from the R-2 zoning district: "Permitted uses. (a) Any use permitted in the R-1 residential district, except mobile homes." By excluding HUD-certified mobile homes from the R-2 district, the City has not imposed any safety or construction requirement on the homes, but has simply determined that this type of housing is inappropriate in an R-2 district. The Eleventh Circuit has expressly held that "[u]ndoubtedly [a city] could limit Zone R-AA to conventionally-built residences and exclude mobile homes."[10] Because the City has not infringed on the federal government's control over safety and construction standards for mobile homes, its zoning ordinance is not preempted by the Act.

King argues that the City imposes safety and construction standards on mobile homes by permitting "a mobile home with a DCA sticker" in R-2 districts. This argument fails to recognize the factual and legal distinction between a modular home and a mobile home. Modular homes are separately defined in the City's ordinance and are built in accordance with OCGA §§ 8-2-110–8-2-121 and the rules of the Department of Community Affairs. The requirements of OCGA § 8-2-110 et seq. are virtually identical to the requirements for a modular home exempt under the federal act.[11] Thus, a modular home is not simply a mobile home with a DCA sticker; instead modular homes and mobile homes are distinct uses, which both the state and federal statutes recognize, and the City's different treatment of them in its zoning ordinance is not an infringement on federal safety standards for mobile homes.

Courts considering similar zoning ordinances have concluded that they are not preempted by the Act. For example, in *Bibco Corporation v. City of Sumter*,[12] the Supreme Court of South Carolina held that the Act did not preempt an ordinance excluding HUD-certified mobile homes from a specific zoning district, but permitting modular homes built under South Carolina's Modular Building Construction Act.[13]

---

[10] *Scurlock v. City of Lynn Haven*, 858 F.2d 1521, 1525 (11th Cir. 1988).

[11] 42 USC § 5403 (f); 24 CFR § 3282.12; OCGA §§ 8-2-110–8-2-121; Ga. Rules and Regs. 110-2-7 et seq. See also *Hill v. Duncan*, 249 Ga. App. 342 (548 SE2d 83) (2001) (using "modular" to describe home built under OCGA § 8-2-110 et seq. and Atty. Gen. Op. 84-4 (referring to OCGA § 8-2-110 et seq. as a "modular home statute").

[12] 504 SE2d 112 (SC 1998).

[13] See also *Texas Manufactured Housing Ass'n v. City of Nederland*, 101 F3d 1095, 1100–1101 (5th Cir. 1996) (ordinance restricting mobile homes to mobile home parks not pre-

King's reliance on *Scurlock v. City of Lynn Haven*[14] is inapposite because of the significant difference between Lynn Haven's and Bainbridge's zoning ordinances. Lynn Haven's ordinance provided no specific uses or exclusions in the relevant zoning district. Instead, the ordinance relied solely on its safety code to distinguish appropriate uses. The Eleventh Circuit concluded that the ordinance would require greater safety and construction standards on mobile homes in that district, and therefore, federal law preempted the local ordinance.[15] The court contrasted the impermissible Lynn Haven statute with a permissible one that specifically excluded mobile homes from a particular zoning district.[16] The City does not rely on its safety codes, as Lynn Haven did, but instead excludes HUD-certified mobile homes from R-2 districts regardless of safety and construction standards.

King also relies heavily upon the testimony of one City official that a mobile home that could meet the City's building codes could be placed in an R-2 district. The official's testimony is in conflict with the plain language of the ordinance and is unsupported by any evidence that the City has ever applied the ordinance except as it is written. Therefore, this testimony fails to support the argument that the ordinance conflicts with federal law.[17]

Additionally, we acknowledge the Catch-22 in which the City finds itself. Under *Cannon v. Coweta County*,[18] which did not address the preemption issue, this Court held that a zoning ordinance that restricted mobile homes to mobile home parks, based on aesthetic and protection of property values concerns, was unconstitutional.[19] Instead, the Court held that a municipality can only regulate the placement of mobile homes based on construction standards.[20]

---

empted); *Brookside Village v. Comeau*, 633 SW2d 790 (Tex. 1982) (same); *Burton v. City of Alexander City*, No. Civ. A. 99-D-1233-E (M.D. Ala. March 20, 2001) (2001 WL 527415) (same).

[14] 858 F.2d 1521.

[15] See also *Colorado Manufactured Housing Ass'n v. County of Pueblo*, 946 F.Supp. 1539, 1552-1553 (D. Colo. 1996) (ordinances that permit mobile homes in residential districts if they also meet Uniform Building Code standards are preempted).

[16] 858 F.2d at 1525.

[17] See *Clark v. Winnebago County*, 817 F.2d 407, 409 n. 4 (7th Cir. 1987) (County's position that mobile homes not excluded if they meet building code untenable in light of ordinance providing that mobile homes may not be placed outside mobile home district).

[18] 260 Ga. 56 (389 SE2d 329) (1990).

[19] Id. at 60.

[20] Id. (municipality can regulate placement of mobile homes only if they meet standards "designed to assure that the home will compare favorably with other housing that would be allowed on that site," quoting case that held that acceptable standards included insulation, adequacy of plumbing, and windstorm damage). See *Robinson Township v. Knoll*, 302 NW2d 146, 152 (Mich. 1981).

## Constitutionality of Ordinance

King also contends that the zoning ordinance is unconstitutional because it exceeds the police powers of the City under *Cannon*.[21] We now conclude that *Cannon* was wrongly decided and hereby overrule it. A zoning ordinance does not exceed a city's police powers unless it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare."[22] Courts routinely uphold zoning ordinances broadly restricting mobile home placement.[23] A wide variety of rationales have been found sufficient to justify these ordinances: preserving land for low density, single-family dwellings,[24] protection of property values,[25] guarding against increased crime,[26] guarding against traffic congestion,[27] maintaining aesthetics,[28] regulating population density,[29] preventing waste and sewage problems,[30] regulating quality of housing stock,[31] and concerns about wind vulnerability.[32]

The evidence in this case showed that the City's purpose in restricting mobile home placement was to regulate the quality of housing stock and promote general safety concerns. These reasons are not arbitrary or unreasonable and bear a substantial relation to the public health, safety, and general welfare. Therefore, the City's ordinance is not unconstitutional.

*Judgment affirmed. All the Justices concur, except Benham and Thompson, JJ., who dissent.*

THOMPSON, Justice, dissenting.

I believe the City's zoning ordinance is an unconstitutional encroachment upon federal law. Accordingly, I dissent.

1. Federal preemption occurs when a federal law conflicts with a state law, including zoning ordinances and other laws created by

---

[21] Id.

[22] *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365, 395 (47 SC 114, 71 LE 303) (1926).

[23] See, e.g., *Town of Scranton v. Willoughby*, 412 SE2d 424 (SC 1991); *McCollum v. City of Berea*, 53 SW3d 106 (Ct. App. Ky. 2000) and cases cited in n. 17-29. See also Rathkoph, The Law of Planning and Zoning § 19.04; Annot., 17 ALR 4th 106, 111 § 3 (1982).

[24] *Bibco*, 504 SE2d at 116-117.

[25] *Texas Manufactured Housing Ass'n*, 101 F3d at 1106; *Colorado Manufactured Housing Ass'n v. City of Salida*, 977 F.Supp. 1080, 1085 (D.Colo. 1997).

[26] *Bibco*, 504 SE2d at 116-117.

[27] *Bibco*, 504 SE2d at 116-117.

[28] *Clark*, 817 F.2d at 409.

[29] *Duggins v. Town of Walnut Cove*, 306 SE2d 186 (N.C. App. 1983).

[30] *Brookside Village*, 633 SW2d 790; *Barre Mobile Home Park v. Town of Petersham*, 592 F. Supp. 633, 636 (D. Mass. 1984).

[31] *Burton*, 2001 WL 527415, * 10.

[32] *Grant v. Seminole County*, 817 F.2d 731, 736 (11th Cir. 1987).

municipalities. See *Scurlock v. City of Lynn Haven*, 858 F2d 1521, 1524 (11th Cir. 1988). In such cases, if the two conflicting laws cannot be reconciled to serve the full purposes and objectives of Congress in passing the federal law, the supremacy clause dictates that the state law must give way to the federal law. States do not have the constitutional power to legislate in federally preempted areas of law. Id. at 1523-1524.

At issue before us is a conflict between a City of Bainbridge zoning ordinance and 42 USC § 5403 (d), which provides:

> Whenever a Federal [mobile] home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have authority either to establish, or to continue in effect, with respect to any [mobile] home covered, any standard regarding construction or safety applicable to the same aspect of performance of such [mobile] home which is not identical to the Federal [mobile] home construction and safety standard.

This statute clearly evidences congressional intent to "preclude[ ] states and municipalities from imposing construction and safety standards upon mobile homes that differ in any respect from those developed by HUD." (Emphasis omitted.) *Scurlock*, supra.

The evidence presented in this case demonstrated that modular homes, which are prefabricated, but are not built on a chassis, could be placed in an R-2 zoning district if they bore a Department of Community Affairs ("DCA") certification sticker; that a DCA sticker certifies that a modular home is built in accordance with the Georgia Industrialized Building Act; and that, aesthetically, as long as a "skirt" is placed around a mobile home, there is very little, if any, difference between a modular home and a mobile home. There was also evidence that modular homes bearing a DCA sticker are safer than mobile homes bearing a HUD sticker; and that the City adopted its ordinance restricting mobile homes to mobile home parks and subdivisions for safety purposes. In this regard, the city manager testified that the City would not permit a mobile home with only a HUD sticker in an R-2 zoning district; but it would permit a mobile home with a DCA sticker in such a district because it would have been "built stronger and safer."

In *Scurlock*, a City of Lynn Haven zoning ordinance permitted mobile homes that met the City's building codes to be placed anywhere within city limits; mobile homes with only a HUD sticker, however, were restricted to licensed trailer parks. The City argued that the ordinance passed constitutional muster because mobile homes were built to a lesser standard and were less safe. The court

determined that the City's rationale for limiting the siting of mobile homes was impermissible because safety standards for such homes were preempted by federal law. The court reasoned that if HUD has set the standard for safe construction, a municipality cannot create barriers to the full implementation of that standard. Id. at 1524-1525.

Like the zoning ordinance in *Scurlock*, supra, the purpose and effect of the zoning ordinance in this case are to limit the siting of mobile homes based solely on their manner of construction. Because this zoning rationale impedes the full implementation of federal building standards, the City's zoning ordinance is unconstitutional.

True, on its face, the zoning ordinance appears to restrict the location of mobile homes appropriately. However, as noted above, the City enacted, and intends to enforce, its ordinance on the basis of construction and safety concerns. Thus, the ordinance was enacted as a thinly veiled attempt to circumvent the HUD safety and construction standards,[33] and to frustrate the federal objective,[34] to wit: the regulation of mobile home safety standards.

When all is said and done, it is clear that in enacting its ordinance the City was motivated by a desire to legislate in the mobile home safety arena; and the City's interpretation of the ordinance gives it that effect. The ordinance should not be saved simply because it appears to be regular on its face. See *Hunter v. Underwood*, 471 U. S. 222 (105 SC 1916, 85 LE2d 222) (1985) (although law disenfranchising persons convicted of crimes appears neutral on its face, it will be held to violate equal protection if its original enactment was motivated by a desire to discriminate and it continues to have that effect).

---

[33] Compare *Texas Manufactured Housing Assn. v. City of Nederland*, 101 F3d 1095, 1100 (5th Cir. 1996).

[34] In determining preemption vel non, it is the practical impact of the ordinance that counts. See *Gade v. National Solid Wastes Mgmt. Assn.*, 505 U. S. 88, 105-106 (112 SC 2374, 120 LE2d 73) (1992). See also *Perez v. Campbell*, 402 U. S. 637, 651-652 (91 SC 1704, 29 LE2d 233) (1971), in which the Supreme Court observed:

We can no longer adhere to the aberrational doctrine . . . that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy – other than frustration of the federal objective – that would be tangentially furthered by the proposed state law. . . . [A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.

*In this case, the articulated purpose of the ordinance was one which frustrates the federal objective.* When pressed at oral arguments, counsel for the City was unable to provide any rationale other than safety for limiting the placement of mobile homes.

2. In *Cannon v. Coweta County*, 260 Ga. 56 (389 SE2d 329) (1990), this Court held that an ordinance restricting the placement of mobile homes exceeds the police power *if it is enacted to protect property values*. Unlike the ordinance in *Cannon*, the ordinance in this case was enacted for safety reasons. Thus, this case does not present a *Cannon* issue, and I see no need to debate its merits at this time.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED MARCH 10, 2003 —
RECONSIDERATION DENIED APRIL 11, 2003.

*Gilbert J. Murrah*, for appellant.
*Kirbo & Kendrick, Bruce W. Kirbo*, for appellee.