878 So.2d 180 (2004)
MISSISSIPPI MANUFACTURED HOUSING ASSOCIATION, Appellant,
v.
BOARD OF SUPERVISORS OF TATE COUNTY, Mississippi, Appellee.
No. 2002-CA-01613-COA.
Court of Appeals of Mississippi.
February 17, 2004.
Rehearing Denied May 4, 2004.
Certiorari Denied July 29, 2004.
*182 Powell G. Ogletree, Jason Douglas Watkins, Jackson, attorneys for appellant.
John Thomas Lamar, Senatobia, attorney for appellee.
Before SOUTHWICK, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. The Mississippi Manufactured Housing Association (MMHA) appeals from the Tate County Circuit Court's affirmance of the amendment of a zoning ordinance, asserting that ordinance is arbitrary and capricious and therefore violates its rights to due process as secured under the Fourteenth Amendment to the United States Constitution. Finding that MMHA failed to show that the ordinance is not substantially related to a legitimate government purpose, we affirm.

STATEMENT OF THE CASE
¶ 2. In September of 2000, Tate County began preparing to revise its county comprehensive zoning plan that had been adopted in 1972. The Allen and Hoshall firm was employed by Tate County to assist in the revision of the comprehensive zoning plan. On June 27, 2001, the planning commission held a public hearing, at which Charlie Goforth, a representative of Allen and Hoshall, discussed with citizens *183 of Tate County the increased growth in the western and northern areas of the county. This growth was caused by people, who were working in the developing commercial areas of Tunica and DeSoto Counties, as well as Memphis, Tennessee, choosing to reside in Tate County. At the public hearing, Goforth presented an amended comprehensive zoning plan to accommodate this growth while preserving Tate County's tax base and property values. On September 14, 2001, the county's board of supervisors (the board) held a public hearing, after which the board adopted the revised comprehensive zoning plan as a county ordinance.
¶ 3. The 1972 ordinance established three residential districts: R-1 (single family), R-2 (single family) and R-3 (multi-family). Manufactured homes were prohibited in R-1 and R-2, but allowed in R-3 "[u]pon written approval of the Planning Commission." The 1972 ordinance also allowed manufactured housing in A-1 (agricultural) districts as "single family residences including mobile homes." Goforth's presentations indicated that as Tate County grew under the 1972 ordinance, various mobile home and manufactured housing communities became established in R-3 districts, after approval of the planning commission, and people living in more agricultural areas sometimes lived in manufactured housing as their primary residence, or even placed manufactured housing on their property for second residences.
¶ 4. The amended ordinance set forth five, rather than the previous three, residential districts: R-R (single family rural population density), R-1 (single family low population density), R-2 (single family medium population density), R-3 (multiple family medium population density), and R-M (low population density manufactured and modular homes, including single family). Goforth's presentations indicated that the R-M districts were drawn to encompass all existing mobile home or manufactured housing communities. The amended ordinance additionally set forth an AG district (agricultural) on which manufactured housing was permitted in very low population density areas. The amended ordinance also "grand fathered in" non-conforming uses, whereby if a property owner had a manufactured housing unit on his property, and the unit was destroyed, he could replace the unit with one of equal or greater value, so long as it met current federal construction regulations governing manufactured housing.
¶ 5. No issue was raised as to notice and opportunity to be heard. MMHA's counsel was given opportunity to be heard in both hearings, and at both meetings, MMHA's counsel asserted that the proposed revision of the comprehensive zoning plan illegally restricted manufactured housing. Neither is there any issue raised asserting that Tate County failed to meet any technical requirement of adopting the zoning ordinance.
¶ 6. MMHA sought judicial review in the Circuit Court of Tate County asserting that the adoption of the comprehensive zoning plan was arbitrary and capricious, and a violation of its rights to due process secured under the Fourteenth Amendment to the United States Constitution.
¶ 7. In addition to the issues presented by MMHA in the circuit court, the board brought a motion to dismiss for lack of standing. However, prior to oral arguments before the circuit court, the board withdrew the motion upon being advised by counsel opposite of a decision by the supreme court. That case, Tallahatchie Valley Electric Power Association v. Mississippi Propane Gas Association, Inc., 812 So.2d 912 (Miss.2002), involved a non-profit association of propane gas retailers' *184 challenge to an electric power association's acquisition of a propane gas retailer. The cause of action in that case could fairly be termed an ultra vires challenge, in which it was asserted that the electric power association exceeded the scope of its enabling legislation and corporate charter by venturing from the delivery of electrical power and into the delivery of propane. Id. at (¶¶ 33-34). The supreme court found that the non-profit association had standing not because it had a colorable claim in the ultra vires act of the electrical association, but rather because one of its members was also a member of a subsidiary corporation formed by the electric power association, and therefore the nonprofit association had standing to assert the claim of one of its members. Id. at (¶ 34).
¶ 8. In this case, there was no showing that MMHA, nor any of its members, owned any land in Tate County. There was no showing that any MMHA, nor any of its members, had been denied an opportunity to develop a manufactured housing community. There was no showing that MMHA, nor any of its members, have suffered any loss of sale of manufactured housing because of the amended zoning ordinance. Therefore, it could be argued that Tallahatchie Valley, 812 So.2d at 912, is inapplicable to this case. Nevertheless, Mississippi has taken a liberal view in finding parties have standing to assert issues.
This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language. Therefore, this Court has been "more permissive in granting standing to parties who seek review of governmental actions." In Mississippi, parties have standing to sue "when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law."
State v. Quitman County, 807 So.2d 401(¶ 11) (Miss.2001). See also Burgess v. City of Gulfport, 814 So.2d 149, 152-53 (Miss.2002). Consequently, even if this issue were in controversy, it is likely that MMHA would be found to have standing.[1] However, the unique position of MMHA in this action does have some practical consequences for the merits in that MMHA presents a record containing little other than the pleadings and zoning ordinance and documents pertaining to its creation. No property owner appeared before the board to argue he was aggrieved by the board's decision, or that the board's decision was contrary to law. Rather, all the record contains that indicates the amendment of the zoning ordinance was improper are conclusions of law by MMHA's counsel absent a factual context.
¶ 9. On August 23, 2002, the circuit court dismissed the appeal. In its order, the circuit court found that the board "received information along with the public as to the growth in population and housing, housing needs, health concerns, increased need for schools and the need for water and fire protection, all of which the Board claims it considered prior to the adoption of the plan." The circuit court further found that the comprehensive zoning plan was adopted in accordance with Mississippi statutes, which were enacted pursuant to "a valid reason for local governing authorities to regulate and zone areas for the use *185 of manufactured movable homes," and that Tate County's revision of it's comprehensive zoning plan allowed manufacture housing to be placed in 86.4% of the land located within the county.

DISCUSSION
¶ 10. MMHA raises multiple issues, which we recite verbatim:
A. The board (of supervisors) has not demonstrated a change or mistake to justify its re-zoning of manufactured homes.
B. The board (of supervisors) was arbitrary and capricious in adopting the new zoning ordinance.
1. The board (of supervisors's) express purpose  to prevent the proliferation of manufactured housing  is not a legitimate purpose.
2. The method of construction is not a legitimate purpose or concern.
3. Safety is not a legitimate purpose for the board's re-zoning.
4. A residence is a residence: distinguishing between manufactured housing and other forms or hosing is not an issue of use, and therefore classification by use is not a legitimate purpose for zoning manufactured housing.
5. While density is a legitimate zoning purpose, restrictions on manufactured housing are not reasonably related to the prevention of overcrowding.
6. Restrictions on manufactured housing are not reasonably related to legitimate concerns about aesthetics or property values.
C. The circuit court committed an error of law when it misinterpreted Mississippi Code Annotated Section 17-1-39 (Rev.2000).

STANDARD OF REVIEW
¶ 11. The standard of review in zoning matters is well settled.
All presumptions must be indulged in favor of the validity of a zoning ordinance if it is within the legislative power of the city. Such an ordinance is presumed to be reasonable and for the public good. The presumption of reasonableness must be applied to the facts of the particular case, and it applies to re-zoning as well as to the original zoning regulation, but not with the same weight, the presumption being that the zones are well planned and arranged to be more or less permanent, subject to change only to meet a genuine change in conditions.
Bd. of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 883 (Miss.1987) (quoting W.L. Holcomb v. City of Clarksdale, 217 Miss. 892, 900, 65 So.2d 281, 284 (1953)).

A. REVISION OF COMPREHENSIVE ZONING PLAN
¶ 12. MMHA frames this issue as whether a re-zoning of a particular piece of property is justified. Such a case is viewed under the "change or mistake rule," requiring that "clear and convincing evidence must show either there was a mistake in the original zoning, or the character of the neighborhood has changed." Holcomb, 217 Miss. at 899-900, 65 So.2d at 284; Conerly, 509 So.2d at 883.
¶ 13. However, MMHA additionally asserts that a political entity is powerless to amend its entire zoning ordinance, based upon a subsequent comprehensive zoning plan, to adapt to changes in growth. MMHA states in it's brief, "[a]rguably the lower court referred to a change or mistake in Tate County's original zoning [ordinance] by noting the county's need to adjust to growth. Adjusting to growth, however is no change within the meaning *186 of the change or mistake rule." This is an incorrect statement of law.
¶ 14. The supreme court has expressly found a political entity's need to adjust to growth, in and of itself, "requires" a comprehensive plan and zoning ordinance be reexamined. Blacklidge v. City of Gulfport, 223 So.2d 530, 533 (Miss.1969) (emphasis added).
It is inevitable that the antiquated, traditional and affluent residential areas and estates of the past must give way to modern, progressive, gadget-equipped buildings of the future. The quiet life of yesterday is being swept aside and swamped by a tide of phenomenal, sudden growth. Where yesterday a fisherman pulled his little boat out on a sandy beach, today 16,000 boxes of bananas are being unloaded each hour from ocean-going ships. The quiet life of yesterday is shattered by the blating and groaning traffic piercing the veil of peaceful tranquility. There is no turning back, and those who would be in quiet serenity will eventually retreat from the battle and fatigue of modern progress. Change is inevitable. Those who guide the destiny of urban development must meet the challenge of a new era. They must stay abreast of modern times, and the hustle and bustle of this modern age. It is not only legally permissible for the municipal authorities to reexamine the zoning ordinances of their city as to necessary changes and new classifications essential to the welfare of the city, but it is their duty to do so where there is substantial evidence shown before the municipal authorities on which to base their determination. The court will not substitute its judgment for that of the municipal authorities.
Id. 533-34.
¶ 15. The supreme court has also approved "contingent re-zoning," where growth around a geographical area threatened to alter the use of the land by present landowners. Old Canton Hills Homeowners Ass'n v. Mayor and City Council of the City of Jackson, 749 So.2d 54(¶ 14) (Miss.1999). In that case, a geographical area was annexed and then re-zoned, in order to prevent development that would have been allowed under the prior zoning regulation, but which would have damaged the overall character of the annexed area. Id. at (¶ 15).
¶ 16. MMHA asserts the "change or mistake" rule out of context. Typically, the "change or mistake rule" is applied when landowners object to a political entity's decision to re-zone, or not re-zone, individual pieces of property they own. For example, in Fondren North Renaissance v. Mayor and City Council of City of Jackson, 749 So.2d 974 (Miss.1999), the central issue was whether the character of an individual neighborhood had changed to the extent that re-zoning from individual residences to multi-residential was warranted, and the homeowners in the neighborhood objected to the City's action, while those wishing to utilize the re-zoned property supported the City's action. Id. at (¶ 6). The contentions were between two landowners, each urging the City to approve their valid, but apparently incompatible, land uses. Id. at (¶ 18). See also Bd. of Aldermen, City of Clinton v. Conerly, 509 So.2d 877, 882 (Miss.1987) (in which property owners of single family residence objected to re-zoning in their neighborhood to allow for construction of duplex townhouses). Conversely, in the present case, the revision of the comprehensive plan and the amendment of the zoning ordinance did not alter any present use of land within Tate County. Rather, Goforth specifically stated in both hearings that the amended ordinance "grand fathered in" *187 any existing, non-conforming presence of manufactured housing, so that if a landowner's manufactured home was destroyed, he could replace it with a unit of equal or greater value without having to request a variance.[2] Additionally, Goforth stated that the R-M (manufactured housing residential) districts were drawn to explicitly include any existing manufactured housing community in the county. Lastly, Goforth noted that the AG (agricultural) districts provided that property owners in agricultural, low population density areas could continue their practice of putting manufactured housing on their property for the use of their children or other relatives.[3] Therefore, this case does not present any landowner asserting that the board amendment of its zoning ordinance deprives him of the use of his property.
¶ 17. The irony of MMHA's legal position is that it is literally true that Tate County did not show a specific change in the character of any area of the county; however, this is only true because there is no showing that the amendment resulted in any property owner having the current use of his property altered. The amended zoning ordinance preserved all current property uses. MMHA asserts in its rebuttal brief that there is no exception to the change or mistake rule "every twenty or thirty years when the board adopts a new comprehensive plan." Arguably, this could be a valid issue if the amended zoning ordinance precluded a property owner from using his property in previously accepted property use or operated to alter the character of a community. However, a "zoning ordinance must be construed as a whole, and it may not be dissected and considered as a multitude of ordinances having no relation to the general scheme of zoning." Holcomb, 217 Miss. at 900, 65 So.2d at 284 (quoting 62 C.J.S. Municipal Corporations § 288(2) (1949)). Additionally, appellate scope of review is limited in zoning matters. MMHA urges this Court to reject the appellate standard. However, the case law is well settled that "[a] decision by a local governing board is presumed valid, and the burden is upon the person seeking to set it aside to show that it was arbitrary, capricious and unreasonable." Fondren North Renaissance, 749 So.2d 974(¶ 18) (quoting Bd. of Aldermen, 509 So.2d at 885). In this case, the zoning ordinance, viewed as a whole, was amended in an effort to preserve current uses while channeling growth to be economically and socially positive for Tate County's citizens.
¶ 18. This Court finds that the record contains clear and convincing evidence supporting the circuit court's finding that "[t]he board [of supervisors] recognized a need to update zoning and to adopt a countywide comprehensive plan that would permit planned growth of the County that would promote the health, safety, morals and general welfare of the entire County." The circuit court did not err in affirming *188 the boards' adoption of the new comprehensive plan and adoption of the amended zoning ordinance.

B. WHETHER THE AMENDED ZONING ORDINANCE WAS ARBITRARY AND CAPRICIOUS
¶ 19. The supreme court addressed the express issue of due process in the operation of zoning ordinances affecting manufactured housing in Carpenter v. City of Petal, 699 So.2d 928 (Miss.1997).
"[Z]oning decisions will not be set aside unless clearly shown to be arbitrary, capricious, discriminatory, illegal or without a substantial evidentiary basis. There is a presumption of validity of a governing body's enactment or amendment of a zoning ordinance and the burden of proof is on the party asserting its invalidity. Where the point at issue is "fairly debatable," we will not disturb the zoning authority's action.
Id. at (¶ 13).
¶ 20. In Carpenter, the supreme court struck down a zoning ordinance which restricted manufactured housing except in designated mobile home parks, while at the same time allowing such uses as commercial stables and kennels, poultry, livestock and small animal raising in RF (rural fringe) districts where manufactured housing was prohibited. Id. at (¶ 17).
The Board's assertion that restriction of mobile homes and modular housing to mobile home parks is necessary to protect property values in surrounding residential areas rings hollow. Were individual mobile homes and/or other forms of manufactured housing prohibited only in R-1 and R-2 residential districts, it would, at least, be fairly debatable whether the ordinance, as drafted, was necessary to meet its intended purposes. Prohibiting individual mobile home or even modular home sites in any area other than designated mobile home parks, however, bears no relationship to the goal of preserving surrounding residential property values.
Id.
¶ 21. In this case, the zoning ordinance is of the type that the Carpenter court found would be "fairly debatable," and therefore constitutionally permissible. While the zoning ordinance restricted manufactured housing from all residential districts not specified for manufactured housing, the zoning ordinance specifically allowed for manufactured housing in the county's agricultural areas, and the ordinance did not include a per se prohibition in residential areas as well. It is at least fairly debatable that the amended zoning ordinance will protect property values of site built housing. Therefore, the zoning ordinance in question in this case is not precluded by Carpenter. Nevertheless, MMHA raises six specific assertions of substantial due process deprivations.

1. THE BOARD'S EXPRESS PURPOSE  TO PREVENT THE PROLIFERATION OF MANUFACTURED HOUSING IS NOT A LEGITIMATE PURPOSE
¶ 22. The contract between Tate County and Allen and Hoshall expressly stated the purpose was to "establish long range goals for the county. These goals shall include: residential, commercial and industrial development, parks, open space and recreation, street or road improvement; and public schools and other community facilities." There is no judicial finding that the "express purpose" was to prevent the proliferation of manufactured housing. However, in the public hearing before the board residents expressed concern that the proposed comprehensive plan and maps would allow for the proliferation of manufactured housing. One exchange *189 concerning a map showing existing mobile or manufactured housing units within the county provided:
Mr. Smith: You still hadn't answered my question, sir. Are they [manufactured housing]  are they concentrated, meaning there's just 100 of them there? Are there just three there or  because I don't understand why you've chosen arbitrarily to put trailer homes in certain areas and not in others.
Mr. Goforth: Well, I mean, right here there's probably twenty in that one little area right there. There are hundreds in this area.
Mr. Smith: Well if you zone it that way there will be millions of them there.
Mr. Goforth: There will be more; yes sir.
Therefore, nothing in the record indicates that the zoning ordinance amendment was solely to prevent the proliferation of manufactured housing, nor does the record reflect that the amended zoning ordinance would halt any proliferation of manufactured housing. This issue is without merit.

2. THE METHOD OF CONSTRUCTION IS NOT A LEGITIMATE PURPOSE OR CONCERN
¶ 23. The Fifth Circuit Court of Appeals expressly rejected the argument advanced here that the National Manufactured Housing Construction and Safety Standards Act of 1974 (NMHCSSA), 42 U.S.C. §§ 5401-5426, has preemptive effect on local zoning ordinances. Tex. Manufactured Hous. Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1099 (5th Cir.1996).[4] MMHA argues that 2000 amendments to 42 U.S.C. § 5403(d) broadened NMHCSSA's preemptive effect on local zoning ordinances. The 2000 amendment in question provides:
Federal preemption under this subsection shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this chapter. Subject to section 5404 of this title, there is reserved to each State the right to establish standards for the stabilizing and support systems of manufactured homes sited within that State, and for the foundations on which manufactured homes sited within that State are installed, and the right to enforce compliance with such standards, except that such standards shall be consistent with the purposes of this chapter and shall be consistent with the design of the manufacturer.
Pub.L. 106-569, § 604(2).
¶ 24. NMHCSSA's preemptive effect concerns "construction" regulations. The 2000 amendments do not preclude local governments from utilizing zoning ordinances to regulate manufactured housing. Courts throughout the nation continue to hold that local zoning laws may regulate the location of manufactured housing by excluding manufactured housing from some residential classifications on the basis of their differences in construction from other types of housing. See, e.g., King v. City of Bainbridge, 276 Ga. 484, 577 S.E.2d 772, 773 (2003); Landon Holdings, Inc. v. Grattan Tp., 257 Mich.App. 154, 667 N.W.2d 93, 106 (2003); McCollum v. City of Berea, 53 S.W.3d 106, 109 (Ky.Ct.App.2001). There is no merit to this assignment of error.

*190 3. SAFETY IS NOT A LEGITIMATE PURPOSE FOR THE BOARD'S RE-ZONING
¶ 25. In this assignment of error, MMHA argues that Mississippi's adoption of the uniform standards code for factory manufactured moveable homes, precludes zoning requirements from considering safety as an issue. Nothing in the record shows the board considered manufactured housing to be unsafe, or that safety was a consideration in amending the zoning ordinance. To the extent that this is asserted as an issue, it is without merit.

4. DISTINGUISHING BETWEEN MANUFACTURED HOUSING AND OTHER FORMS OF HOUSING IS NOT AN ISSUE OF USE, AND THEREFORE IS NOT A LEGITIMATE PURPOSE FOR ZONING MANUFACTURED HOUSING
¶ 26. No legal authority is cited for this proposition. As such, the issue could be viewed as abandoned. Rigby v. State, 826 So.2d 694, 707 (¶ 44) (Miss.2002). Moreover, as noted above, this argument has been rejected in other jurisdictions. See, e.g., King, 577 S.E.2d at 773; Landon Holdings, 667 N.W.2d at 106; McCollum, 53 S.W.3d at 109. In this state, the supreme court found it was "fairly debatable" whether manufactured housing could be excluded from other single residential housing construction to further the legitimate government purpose of "preserving surrounding residential property values." City of Petal, 699 So.2d at (¶ 17). An ordinance that is found "fairly debatable" in furthering a legitimate governmental purpose, such as protecting property values, passes due process muster. Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 388, 47 S.Ct. 114, 71 L.Ed. 303 (1926). See also City of Petal, 699 So.2d at (¶ 13). Therefore, this issue is without merit.

5. WHILE DENSITY IS A LEGITIMATE ZONING PURPOSE, RESTRICTIONS ON MANUFACTURED HOUSING ARE NOT REASONABLY RELATED TO THE PREVENTION OF OVERCROWDING
¶ 27. No legal authority is cited for this proposition. As such, the issue could be viewed as abandoned. Rigby, 826 So.2d at (¶ 44). Nevertheless, the evidence in the record does tend to show that Tate County's amended zoning ordinance requires manufactured housing to be placed on larger residential lots than other forms of construction, such as site built. Manufactured housing on "residential" lots was required to have a lot of one acre, while residential lots for site built housing were set at 15,000 and 12,000 square feet. It appears the site built lots were originally set to be much larger, 43,500 and 40,000 square feet, but for some reason not shown in the record, the final amended zoning ordinance lessened the area for site built, while making no change in manufactured housing lot size requirements.
¶ 28. "Decisions of municipal authorities in zoning decisions are presumed to be valid legislative decisions." Red Roof Inns, Inc. v. City of Ridgeland, 797 So.2d 898(¶ 6) (Miss.2001). In this case, MMHA presented no testimony in the public hearings as to why or how the differences in density requirements precluded citizens being able to purchase manufactured housing. Rather, the scant evidence that can be adduced from the public hearings was Goforth's answer, to the criticism of increases in manufactured and mobile homes in the county, that the amended zoning ordinance would result in more growth of these homes. Moreover, Goforth also stated that other adjacent *191 counties, which were fueling Tate County's population growth, had even stricter restrictions on manufactured housing by requiring even greater acreage for manufactured housing, and MMHA conceded in its briefs that the amended zoning ordinance at issue in this case actually reduced the acreage requirements that the zoning ordinance required prior to its amendment. However, the most dispositive fact in the record is that MMHA admitted a manufactured home will cost less per square foot than a site built home. It is reasonable that the board wanted to protect the values of site built homes by requiring manufactured homes to be placed a reasonable distance from the site built homes. See, e.g., Northfield Dev. Co., Inc. v. City of Burlington, 136 N.C.App. 272, 523 S.E. 2nd 743 (¶ 13) (2000) (holding a zoning regulation mandating differing density requirements for manufactured housing and on site housing neither constituted a per se prohibition nor infringed upon due process by making an arbitrary or capricious distinction). While there could be an issue that the amended zoning ordinance might preclude a developer from building a subdivision consisting solely of manufactured housing on modest, residential lots, there is no showing in the record that any such development is contemplated. Moreover, assuming some such showing was made, there is no showing that the zoning ordinance could not provide for such a use through a variance, which was the means that Tate County used under the previous zoning ordinance to create the mobile home or manufactured housing communities that were grandfathered into the amended zoning ordinance. Therefore, we find that the record does not present facts to overcome the presumption of validity and to show that the board acted arbitrarily or capriciously in adopting density and lot size requirements in the amended zoning ordinance. There is no merit to this assignment of error.

6. RESTRICTIONS ON MANUFACTURED HOUSING ARE NOT REASONABLY RELATED TO AESTHETICS OR PROPERTY VALUES

AND

C. THE CIRCUIT COURT COMMITTED AN ERROR OF LAW WHEN IT MISINTERPRETED MISSISSIPPI CODE ANNOTATED SECTION 17-1-39 (REV.1995)
¶ 29. The central issues of this case were whether Tate County complied with Mississippi Code Annotated Section 17-1-39 (Rev.1995), and what additional restrictions due process placed upon the county's power to regulate manufactured housing. Mississippi Code Annotated Section 17-1-39 (Rev.1995) provides:
(1) For purposes of this section, the term "factory manufactured movable home" is defined as provided in Section 75-49-3, Mississippi Code of 1972.
(2) Any municipality or county of this state may adopt and enforce zoning or other land use regulations or ordinances relating to factory manufactured movable homes, including, but not limited to, regulations and ordinances which establish reasonable appearance and dimensional criteria for factory manufactured movable homes, provided that such regulations and ordinances do not have the effect of prohibiting factory manufactured movable homes which otherwise meet applicable building code requirements from being lawfully located in at least some part or portion of the municipality or county.
MMHA's counsel framed the issue in the circuit court:
We're saying that 17-1-39 is a minimum protection. It is  that is  the State *192 Legislature has said that, you know, Tate County and every other county at the very least, you have to allow manufactured housing in some portion. But even with that, you still have the additional constitutional protections in all the other areas where they still have to have legitimate purpose to zone manufactured housing out of the area.
This was a correct statement of the law. The statute, by its plain language prohibits per se exclusion of manufactured housing. City of Petal, 699 So.2d at (¶ 19). Additionally, as the Petal court observed, even where there is no per se prohibition, for substantive due process considerations, restrictions on manufactured homes must be tied to a governmental interest that can be said to be at least fairly debatably aimed at the comfort and general welfare of the community. Id. at (¶ 14). MMHA admits in it's brief that manufactured housing costs less than other forms of construction. Property values and aesthetics are valid concerns for zoning ordinances, and zoning ordinances may be applied to manufactured housing to further that goal. Id. at (¶ 19).
¶ 30. The circuit court came to the central issue of this case when it questioned MMHA's counsel on its position.
The Court: Are you saying that Tate County's ordinance should permit ... a manufactured home to be put in any subdivision that some builder may go out in Tate County and start developing for two and three hundred thousand dollar homes, that they ought to have manufactured homes next door to it.
Mr. Watkins: Well, the first thing 
The Court: Are you saying it's unconstitutional that you can't do it, is that right?
Property values and aesthetics are valid concerns for zoning ordinances, and zoning ordinances may be applied to manufactured housing to further that goal. Id.See also King, 577 S.E.2d at 773.[5]
¶ 31. MMHA asserts that the zoning ordinance impermissibly required manufactured housing to have a greater roof pitch than barns in agricultural areas, because such a requirement was arbitrary and capricious and will operate to prevent manufactured housing in Tate County. However, the record contains no evidentiary foundation that manufactured housing does not customarily conform to the required roof pitch. Moreover, Tate County has a legitimate zoning interest in having structures that serve as homes to be distinguishable from barns.
¶ 32. As one federal court observed,
Local governments are empowered to respond appropriately to perceived needs relating to government functions, e.g. stability within the community and property values. The question is not whether the public perception is rational, but whether the government, in exercising its police power to enact legislation, has responded in a rational way to a perceived need for segregation of manufactured housing....
The arguments of Plaintiffs that there is nothing inherently different about manufactured housing which justifies such different treatment, and that manufactured housing is not necessarily incompatible with site-built housing, preservation of the tax base or preservation of market values of site-built homes, are arguments to be addressed to each legislative body concerned and to the citizens of these communities, rather than to the courts. Whether Plaintiffs' arguments *193 concerning these issues are better reasoned than public perception does not trump the democratic process; the remedy is public debate and persuasion and not judicial fiat or ukase. In the absence of invidious discrimination based upon such illicit factors as race, religion or national origin, a majoritarian preference or persuasion, however "accurate," is a legitimate basis for local legislation.
Colo. Manufactured Hous. Ass'n v. City of Salida, Colo., 977 F.Supp. 1080, 1086-87 (D.Colo.1997). Zoning ordinances that are not discriminatory towards a discreet minority do not mandate that public attitudes, even mis-informed attitudes, change. Rather, it is the public perception itself that gives rise to a zoning ordinance making a distinction in construction to further a legitimate purpose.
If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot-not the courts.
Village of Euclid, 272 U.S. at 393, 47 S.Ct. 114 (quoting State v. City of New Orleans, 154 La. 271, 283, 97 So. 440, 444 (1923)).
¶ 33. The record in this case fails to show how any homeowner or MMHA member suffered injury from the amended zoning ordinance. Moreover, by MMHA's own admission, the previous zoning ordinance encompassed greater disparate requirements for lot size than the amended ordinance, and under the previous ordinance any attempt by a developer to build a subdivision of manufactured housing required a variance, and that appears unchanged by the amendment of the ordinance. MMHA is actually benefitted by the amendment to the ordinance which MMHA never challenged prior to the amendment. The presumption that a political entity exercises its zoning power to further a legitimate purpose is not overcome. The record shows that the board adopted the amendment in reasonable response to the needs of the citizens of Tate County, with input from those citizens and any interested party, and with the express acknowledgment that the amendment would allow for additional manufactured housing within the county. Judicial review will not overturn such a decision, as it properly belongs to the elected officials of Tate County. There is no merit to this assertion of error.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR.
NOTES
[1] MMHA asserted similar standing in an earlier unpublished opinion of this Court. The Mayor and Bd. of Alderman of the City of Pearl v. Miss. Manufactured Hous. Ass'n, Inc, 95-CC-00606 COA (Miss.Ct.App. Sept. 23, 1997).
[2] The amended zoning ordinance specifies: "In the case of manufactured housing, but specifically excluding mobile homes, any home destroyed by a fire, explosion or natural disaster may be replaced provided that it was a lawful use at the time of the adoption of this ordinance."
[3] This factual situation, where a landowner in an agricultural area wished to put a manufactured housing unit on his property for his son to reside in, and a zoning ordinance precluded that use, even though a myriad of other uses having arguably detrimental effects on property values were allowed, gave rise to the seminal case in Mississippi concerning manufactured housing, Carpenter v. City of Petal, 699 So.2d 928 (Miss.1997). As discussed in the next section, Tate County's amended ordinance was tailored to avoid that factual scenario.
[4] MMHA filed an amicus brief in this case before the Fifth Circuit.
[5] MMHA cites to Cannon v. Coweta County, 260 Ga. 56, 389 S.E.2d 329, 332 (1990) to support its contention that zoning ordinances may not distinguish manufactured housing from site built housing on the basis of aesthetics or cost. Cannon was overruled by King, 577 S.E.2d at 775.